590 P.2d 931

STATE of Arizona, Appellee,

v.

Edward Lloyd BLODGETTE, Appellant.

No. 4374.

Supreme Court of Arizona,
In Banc.

Feb. 8, 1979.

John A. LaSota, Jr., former Atty. Gen., Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Garth Nelson, Yuma, for appellant.

STRUCKMEYER, Vice Chief Justice.

Edward Lloyd Blodgette appeals from convictions for first degree burglary and grand theft. Affirmed.

Appellant urges that the court below erred in denying his motion for a continuance to produce a witness and in allowing the prosecution to argue inferences which the witness could have rebutted under these facts. In the early morning hours of June 23, 1977, Allen Strasburg drove to the Yuma County Sheriff's Department substation in northern Yuma County and reported that an air compressor and air tank had been taken from the T&L Gas Station near Parker, Arizona. Strasburg related that he had seen an older model blue pickup truck parked near the gas station, and that after hearing car doors slam, saw the truck drive away with the compressor and tank in the back. Strasburg, to confirm his suspicions, went to the station to investigate, then drove to the sheriff's office. On the way, he passed the truck parked just off the road.

Daniel Hal Collett, the deputy on duty, received a request over his radio to investigate. He immediately spotted the truck, stopped his vehicle, and approached appellant who was standing beside the pickup. In response to Collett's questions, appellant identified himself as John B. Phillips, and stated that the compressor was in the truck when he borrowed it from a friend in Phoenix. In the presence of appellant, Collett verified by radio that a compressor was taken from the gas station. Soon thereafter, appellant explained that he bought the compressor from two unknown persons in a bar in Kingman for $400.00. Collett arrested appellant and he was taken to jail in Parker.

Subsequent investigation at the gas station disclosed tire tracks outside the room from which the compressor was taken and footprints on the oily floor of the room. The officers concluded the tire tracks matched those of the pickup driven by appellant, and that the footprints at the scene matched the shoes appellant was wearing when he was arrested.

At the substation the following day, James Rahn, the owner of the truck, inquired whether "Eddie", the driver of the truck, was in custody. Shortly thereafter, appellant admitted his true name, explaining he had used another name because he was on federal probation pursuant to a conviction for possession of illegal firearms.

At trial, after appellant's motion for a directed verdict at the end of the State's case was denied, appellant offered the testimony of James Rahn and Allie Rahn, James' mother. James Rahn testified of his four-year friendship with appellant and confirmed that he allowed appellant to take his truck for a trip to Lake Havasu. In explaining his appearance at the sheriff's substation on the morning following appellant's arrest, Rahn testified that he received a telephone call from one Paul Hutman at his home in Peoria at approximately 7:00 a.m. on June 23, 1977. According to Rahn, Hutman was driving through Parker on his way home from California when he saw Rahn's pickup truck in the parking lot by the Parker jail. Rahn testified that he immediately drove to Parker and went to the sheriff's substation.

Rahn also testified that two individuals parked across the street from the jail showed what he described as an unusual interest in his truck, and he reported this to the Parker deputies. He identified these men as the individuals later described by appellant in his testimony.

Allie Rahn testified that her son was at home on the evening of June 22, and in the early morning hours of June 23.

Appellant testified on his own behalf, describing an industrial accident in April, 1977, which resulted in a compensable back injury. He also related the following alibi. On his return from Lake Havasu, he made a rest stop in a vacant area along the highway north of Parker, when he was approached by two men who said they were interested in purchasing the truck. Later in the conversation, the men offered to sell a compressor to appellant. Due to the late hour, the men declined to take appellant to see it, but offered to pick it up and bring it to him for inspection if he would allow them to use his truck. Appellant agreed. One of the men, who was barefooted, explained that it was rocky where the compressor was located, so appellant lent him his tennis shoes. The men left their car and its keys with appellant and went to get the compressor. The men returned in the truck with the compressor about forty-five minutes later and advised appellant that his keys and shoes were in the truck. After inspecting the compressor, appellant agreed to pay $250.00 for it. When appellant opened his wallet to pay for the compressor, one of the men grabbed the wallet, and both men jumped into their car and drove away. When appellant checked his vehicle, he found his shoes, but the truck keys were missing. Deputy Collett arrived soon thereafter.

On rebuttal, Collett testified it was impossible for a person driving through Parker on the main highway to see a vehicle parked near the jail. The State rested, and before closing arguments, the following discussion took place:

"THE COURT: Mr. Nelson, you had a matter you wanted to bring up?

MR. NELSON: Yes, Your Honor. The State's rebuttal evidence here appears to have been offered for the purpose of rebutting or attacking the testimony of defense witness Jim Rahn about the circumstances under which he became aware of the pickup being at the sheriff's station in Parker. I would also gather from the line of the State's questioning in this area it is to be contended that Mr. Rahn was in fact a participant and confederate in the commission of this offense.

Now in between yesterday's proceedings and this morning I have discussed this matter with Mr. Rahn. He went back to Phoenix and made contact with the friend Paul about whom he testified in his testimony and determined from him the circumstances under which he saw and reported the vehicle. The substance of that was that he had been returning to Phoenix from California, was driving through Parker, and while he was on the highway he drove off from the highway looking around for a store that was open.

In the process of doing that he drove in this general area. He saw this vehicle parked in the sheriff's parking lot, went on back to Phoenix, and gave Rahn a call after he got back. And Mr. Rahn is in the courtroom who can testify to that, but it's clearly hearsay testimony. If the State will not consent to offering surrebuttal evidence in that matter, in the alternative I would move this trial be continued until this afternoon or tomorrow morning to give me an opportunity to have a subpoena issued and obtain the presence of the Paul referred to to appear and testify under these circumstances.

THE COURT: Well, Mr. Nelson, there has been an awful lot of hearsay permitted in the case to begin with, particularly in the testimony of Mr. Rahn concerning his conversation with Paul, whoever he is. In the first place I think the State has been possibly put at a disadvantage as a result. I think at the same time the type of testimony you are talking about now could easily have been anticipated since you are as aware as anybody in the courtroom, I'm sure, where the substation of the sheriff's office is located in Parker with relation to Highway 95. Rather clearly the only way that the friend Paul would have seen this vehicle would have been for him to deviate from Highway 95 for some purpose just as you suggest if it in fact occurred. I think under the circumstances your request must be denied.

I even wonder where in California he was coming from. Possibly he was visiting in the large town of Earp. A lot of people go through, I suppose, on vacations.

MR. NELSON: It is a very common route to follow going to the Los Angeles area.

THE COURT: From Phoenix?

MR. NELSON: Yes.

THE COURT: That's interesting. Your request for continuance is denied and should you put Mr. Rahn on the stand if there is an objection to his proposed testimony I can assure you it will be sustained as hearsay. Do you have anything else?

MR. NELSON: I have nothing further."

In closing argument, State's counsel questioned Hutman's existence and implied that Rahn was appellant's accomplice in the burglary.

It is well settled that the granting of a continuance is within the sound discretion of the trial court, and its ruling will not be disturbed unless it can be shown that such discretion has been abused so as to result in prejudice to the defendant. *State v. Richie,* 110 Ariz. 590, 521 P.2d 1136 (1974); *State v. Benge,* 110 Ariz. 473, 520 P.2d 843 (1974); *State v. McWilliams,* 103 Ariz. 500, 446 P.2d 229 (1968); *State v. Ahumada,* 25 Ariz.App. 247, 542 P.2d 828 (1975). In *State v. Reyes,* 99 Ariz. 257, 408 P.2d 400 (1965), this Court found that the trial court did not abuse its discretion when it refused to grant a continuance overnight

because appellant did not show that the witness could be found or that she would testify on his behalf. *See also State v. Parker*, 19 Ariz.App. 204, 505 P.2d 1095 (1973). Appellant made no such showing in this case.

■ Appellant did not subpoena Hutman. We have held that such failure justified denying a motion for continuance. See *State v. Richie*, supra; *State v. Downing*, 109 Ariz. 456, 511 P.2d 638 (1973). Moreover, Hutman's prospective testimony concerning Rahn's whereabouts on the night in question would have been merely cumulative. Rahn testified that he was home in Peoria and Allie Rahn testified that she called her son at home from Tucson around midnight and that he called her from Peoria just before he left for Parker on the morning of June 23. Since Hutman's testimony on this point would have been cumulative, its exclusion was not prejudicial. *State v. Downing*, supra. The remainder of Hutman's prospective testimony concerning how he spotted the truck would bolster Rahn's alibi, but only indirectly supports appellant's alibi. Due to the tenuous materiality of the testimony to appellant's defense, we do not believe its exclusion was prejudicial.

■ Appellant attempts to excuse this failure by arguing that it was not until the State's rebuttal evidence that it became evident that Hutman's testimony was material, since it would explain how he spotted Rahn's truck and would confirm Rahn's testimony that he was in Peoria when the crime was committed. But we think that where a continuance in the middle of a trial is requested, it should be granted only under the most exigent circumstances. We conclude that the trial court did not err in denying the continuance.

■ In closing argument counsel may make reasonable inferences from the evidence to support their theory of the case. *State v. Freeman*, 114 Ariz. 32, 559 P.2d 152 (1976). Appellant concedes that the closing argument by the prosecution, "in and of itself, would probably not be error", but argues that since the inferences made by the prosecutor were the fruit of the erroneous failure to grant a continuance, the prosecutor's statements constitute reversible error. Since we have found the motion for continuance was properly denied, we can find no legal basis for reversal for this reason.

■ Appellant raises four other claims of error, but since he fails to argue these as required by Rule 31.13(c)(1)(iv), Rules of Criminal Procedure, 17 A.R.S., those which were not argued will be considered as abandoned. See *State v. Bird*, 99 Ariz. 195, 407 P.2d 770 (1965), *cert. denied* 384 U.S. 1025, 86 S.Ct. 1977, 16 L.Ed.2d 1030 (1966); *Brockmueller v. State*, 86 Ariz. 82, 340 P.2d 992, *cert. denied* 361 U.S. 913, 80 S.Ct. 258, 4 L.Ed.2d 184 (1959). We have reviewed the entire record as required by A.R.S. § 13-4035, and find no error.

Affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concurring.