610 P.2d 46

**STATE of Arizona, Appellee,**

v.

**Sylvester SMITH, Jr., Appellant.**

**No. 4456.**

Supreme Court of Arizona, In Banc.

March 27, 1980.

Rehearing Denied April 29, 1980.

---

Robert K. Corbin, Atty. Gen., by William J. Schafer, III, Barbara A. Jarrett, Jessica L. Gifford, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

STRUCKMEYER, Chief Justice.

This is an appeal from a judgment of guilty of murder in the first degree with imposition of the death penalty. Jurisdiction was accepted pursuant to A.R.S. §§ 13–4031 and 13–4035. Affirmed.

Early Friday morning, April 7, 1978, Timothy Hayes, the homicide victim, and his father were in Mulligan's Bar in Maricopa County, Arizona when it closed. Timothy invited some friends to the apartment he shared with Gretchen Flynn for breakfast. Those attending were his father, Charles, Robert "Stu" Morrison, Nathan Allen, Lois Rushing, Carol Larsen and Gretchen.

The defendant, Sylvester Smith, lived in an apartment in the same complex as Hayes. He went to the apartment of Charles Bradshaw, where they drank with Bradshaw's friend, Carol Warner, and discussed a trip to Illinois which Bradshaw was starting on the next day. Smith was invited to go with Bradshaw and so decided to make some phone calls to friends. He and Bradshaw went to a phone booth which was in front of the parking lot across from Mulligan's Bar and Hayes' apartment. They saw the party which was taking place. Smith and Bradshaw knew some of the people at the party. They walked over and stood in the doorway talking with two of the women who were at the party. Bradshaw talked with one of the women from whom he had solicited sexual favors a few days before. The testimony was that the woman treated his solicitation in a joking manner. However an argument started with Timothy Hayes and Robert Morrison. At that time threats were made by Hayes, who is reported to have said to them, "You're dead."

Smith and Bradshaw left the Hayes apartment, then went to Smith's, where Bradshaw armed himself with a .22 rifle and Smith with a 20-gauge shotgun. They then went back to the Hayes apartment. Some of the occupants of the Hayes apartment saw Smith and Bradshaw returning with guns and Hayes put his foot against the door to prevent them from coming in. Smith pounded on the door, calling out, "Here I am, come on out if you're bad enough. Come on out, you mother fuckers." Hayes told Gretchen Flynn to telephone the police. He then went outside to talk to Smith and Bradshaw.

Smith testified that he thought Hayes had a gun and that Hayes tried to jump him. Bradshaw testified that Hayes did not threaten them with a gun and he had no reason to believe he had a gun. Smith shot Hayes, and Smith and Bradshaw then went to Bradshaw's apartment where they were arrested.

Both Smith and Bradshaw were charged with first degree murder. Bradshaw subsequently entered a plea to aggravated assault and testified at Smith's trial. Smith was convicted of first degree murder, and the death penalty was imposed.

Smith first urges that the State failed to produce sufficient evidence to prove the appellant guilty of murder beyond a reasonable doubt.

■ Rule 20 of the Arizona Rules of Criminal Procedure requires that the trial court shall enter a judgment of acquittal "if there is no substantial evidence to warrant a conviction." It is obvious from the recital of the facts of this case that there was substantial evidence from which the jury could have concluded that Smith committed the offense as charged.

Appellant urges that the trial court erred in admitting into evidence a tape recording of a telephone conversation between three occupants of Hayes' apartment and a police officer. When Hayes went outside the apartment to talk with Smith, Gretchen Flynn called the police on the telephone and a recording of the conversation was made at the police station. The entire conversation was admitted in evidence over the objection of the appellant, but only this portion of the recording has any relevance:

"PO: Yes can I help you?

GS: Yeah we would like ah police out to ah 10831 N. Cave Creek Road. There is a disturbance, there's two guys trying to get into the apartment and threatening us and everything.

PO: What apartment number?

GS: 31A. It's the one right next to ah the bar, the Mulligan's Bar.

PO: Okay what is your name?

GS: It's Tim Haze [sic] apartment.

PO: What is your name?

GS: My name is Gretchen Swin [sic].

PO: Your phone number.

GS: I'm calling, huh.

PO: The phone number there?

GS: Ah 997–6529.

PO: Alright what's happening?

GS: Okay there is ah two people out there. We had some people in here that we asked to come over for a couple of drinks and these guys just you know like crashed the party and they had been rather obscene with a couple of girls at the bar, offered them money for services and stuff like this you know and now they are threatening everybody and saying they are gonna shoot em and all this kind of stuff.

PO: Do they have any guns there?

GS: I don't know if they do or not.

PO: Okay we'll have an officer out there.

GS: Yeah, they do have a gun, Tim just said lock [sic] [drop] the gun, so they do have a gun.

PO: Where is Tim in the house?

GS: No Tim is outside trying to talk to them. Tell Tim to get in here.

PO: Man with a gun threatening at 10831 N. Cave Creek Road.

GS: No 10831.

PO: 10831 N. Cave Creek Road, Apartment 31A, Adam. Two men threatening with a gun. Woman states that a man is telling them to drop the gun."

At this point, Carol Larsen took the telephone.

"L: Is this the police?

PO: Yes it is.

L: Would you get out here please they just shot the gun off! Please get out here! There is a disturbance or shooting guns and everything. Did you get the address?"

■ Appellant first urges that the foregoing testimony was not relevant and therefore was not admissible. But we think otherwise. Several of the witnesses estimated that the time Timothy Hayes went out of the apartment to talk to Smith and Bradshaw until he was shot was about five minutes. Since Gretchen Flynn was asked to call the police by Hayes before he went outside, the jury could conclude from the length of the conversation how much time passed before the shooting took place. Moreover, Gretchen Flynn testified at the trial that she heard Timothy Hayes tell Smith to put down his gun, and the recording corroborated her testimony in that respect.

Appellant also argues that the tape recording should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice. Rule 403 of the Arizona Rules of Evidence provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Appellant implies from his argument that the tape recording was highly inflammatory and could only have tended to prejudice defendant in the minds of the jurors. We, however, do not think so. Numerous witnesses testified concerning the events of that evening, and after examining the transcript of the entire recording, we conclude that the recording as a whole is consistent with the testimony of the witnesses, and that no unfair prejudice resulted from the portions of the conversation which were not particularly relevant to an understanding of the offense charged. For example, the statement was made, "You'd better call an ambulance. He's—Timmy has been shot", and regarding the suspects, " * * * one is a black guy and one is a very young child." These statements could not have been prejudicial or inflammatory since, from the commencement of the trial, Smith admitted shooting Hayes, claiming only self-defense. Hence, even if it be assumed that such statements recorded by the police and received in evidence are hearsay, there can be no possible resulting prejudice.

We note particularly the answer on the tape recording of Gretchen Flynn to the question, "All right what's happening?" Her reply was, " * * * and now they are threatening everybody and saying they

are gonna shoot em and all this kind of stuff." This answer was not consistent with her testimony at the trial. In answer to the question, "Now before Tim leaves the apartment do you hear any threats or challenges from outside the apartment?" she testified, "No, I didn't." Although her answer may appear to be inconsistent with her statement to the police officer recorded on the tape, we do not think that the statement on the tape was such as to prejudice appellant in the eyes of the jury, particularly in light of the fact that other witnesses testified that when appellant returned to the apartment he pounded on the door and called, "Come on out, etc."

■ Appellant next argues that Arizona's death penalty statute, A.R.S. §§ 13–453, 13–454, Laws of 1973, Ch. 138, now A.R.S. § 13–701 et seq., violated his right to due process, the equal protection of the law and the right to a jury trial under the Arizona and United States Constitutions. He urges that he cannot be subject to the sentencing provision of A.R.S. § 13–454 because he was charged under A.R.S. § 13–453 and was not given notice of the enhanced punishment provisions of the statute. This issue was decided in *State v. Blazak*, 114 Ariz. 199, 206, 560 P.2d 54, 61 (1977). There we rejected the argument that a defendant must be charged under § 13–454. Appellant had adequate notice of the possibility of the death penalty by virtue of being charged under A.R.S. § 13–453. That statute by its language provides for life imprisonment or death as penalties for first degree murder.

■ Appellant argues that the statute, A.R.S. § 13–454, is unconstitutional because it provides for fixing the penalty by a judge rather than by a jury. This argument was discussed and rejected by this Court in *State v. Watson*, 120 Ariz. 441, 447, 586 P.2d 1253, 1259, cert. denied, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1978).

■ Appellant also argues that placing the burden of proof of establishing mitigating circumstances denies him of his right to due process. The burden of mitigation has consistently been placed on the defendant, *see State v. Watson, supra; State v. Ceja*, 115 Ariz. 413, 415, 565 P.2d 1274, 1276 (1977); *State v. Knapp*, 114 Ariz. 531, 542–43, 562 P.2d 704, 715–16 (1977); *State v. Richmond*, 114 Ariz. 186, 198, 560 P.2d 41, 53 (1976). Facts which would tend to show mitigation are peculiarly within the knowledge of a defendant. In *State v. Watson*, supra at 447, 586 P.2d at 1259, we said:

"* * * When the issue of guilt is settled and only the question of punishment remains, due process is not offended by requiring the already guilty defendant to carry the burden of showing why he should receive leniency. * * *"

■ Appellant next states that sentencing under § 13–454 violates double jeopardy, ex post facto, and constitutes cruel and unusual punishment. Appellant has not argued these propositions and we consider them to be abandoned. Rule 31.13, Arizona Rules of Criminal Procedure, 17 A.R.S.; *State v. Blodgette*, 121 Ariz. 392, 395, 590 P.2d 931, 934 (1979).

■ Appellant finally challenges the validity of imposing the death penalty on the facts in this case. Appellant first argues that the court below in imposing sentence considering a prior conviction for murder which conviction occurred in 1968, but judicially noticed a 1973 Texas statute. However, we do not think this was reversible error. A.R.S. § 13–454(E)(1) provides that an aggravating circumstance to be considered is whether "[t]he defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable." In *State v. Baca*, 102 Ariz. 83, 87, 425 P.2d 108, 112, we said:

"It is settled in this jurisdiction that the constitution, statutes, and reported court decisions of our sister states are a proper subject for judicial notice and need not be proved by the party acting in reliance on them."

We judicially notice that in 1968 the Texas statute provided that the punishment for murder shall be confinement in the penitentiary for life or for any term of years not

less than two. Art. 1256 of the 1929 Texas Penal Code. The authenticated copy of the record on judgment of conviction of appellant shows that he was convicted of the felony offense of murder with malice, and that he was sentenced to confinement in the Texas Department of Corrections for not less than two nor more than eight years. The court below did not err in considering appellant's prior conviction for murder as an offense for which under Arizona law a sentence of life imprisonment was imposable, since murder with malice is as a minimum second degree murder and punishable under § 13–453 by imprisonment in the state prison for not less than ten years. Moreover, the trial judge found in his finding of fact No. 2 at the time of sentencing that:

> " * * * the Defendant on July 25, 1975 was found guilty pursuant to his plea of guilty of the crime of aggravated assault, a third degree felony under Texas law, the date of the offense being May 23, 1975. That crime is * * * an offense which involves the use or threat or [sic] violence of another person."

 Appellant argues that the court erred in finding that appellant's capacity was not significantly impaired by his consumption of alcohol so as to constitute a mitigating circumstance. The court's finding was:

> "The Defendant testified at trial in detail concerning his activities, thoughts and actions on the night of the crime in support of his defense of self-defense. Other witnesses similarly testified concerning the Defendant's condition and actions before, during and after the commission of the murder. The evidence is overwhelming that his consumption of alcohol was not such as to significantly impair his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."

We have reviewed the record pursuant to A.R.S. § 13–4035 and have found no fundamental error.

Nor do we agree that the trial court was compelled to find as a mitigating factor that the defendant was acting in fear or self-defense. The evidence is overwhelming that no such mitigating circumstance existed.

Judgment and sentence affirmed.

HOLOHAN, V. C. J., and HAYS, CAMERON and GORDON, JJ., concur.