710 P.2d 1050

**STATE of Arizona, Appellee,**

v.

**Mitchell JOHNSON, Appellant.**

**No. 6441.**

Supreme Court of Arizona,
En Banc

Nov. 26, 1985.

Terry Adams, Deputy Maricopa County Public Defender, Phoenix, for appellant.

Robert Corbin, Atty. Gen., William J. Schafer III, Chief Counsel Crim. Div., R. Wayne Ford, Gary Fadell, Asst. Attys. Gen., Phoenix, for appellee.

FELDMAN, Justice.

Mitchell L. Johnson (defendant) was convicted of attempted first degree murder and first degree murder. A.R.S. §§ 13-1105, 13-1101 and 13-1001. The trial judge sentenced defendant to life imprisonment with no possibility of parole for twenty-five years for the attempted murder. This sentence was required because the crime was committed while defendant was on parole for a prior felony. A.R.S. § 13-604.01 (renumbered § 13-604.02). Defendant was sentenced to death for the murder. In imposing the death penalty, the trial judge found two aggravating and no mitigating circumstances: defendant knowingly created a grave risk of death to another person who was within the zone of danger and defendant committed the offense in an especially heinous or depraved manner. *See* A.R.S. § 13-703. Defendant appeals from both convictions. Appeal was taken under Rule 31.2(b) Ariz.R.Crim.P., 17 A.R.S.[1] We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3) and A.R.S. § 13-4031.

### FACTS

Defendant arrived in Tucson, Arizona on 10 May 1984, on his way to California with

---

1. The Arizona Rules of Criminal Procedure, 17 A.R.S. will be referred to as Rule ——.

a travelling companion, Louis Hill. He had previously made arrangements to visit Lee Smith, a childhood friend, who lived in Mesa with her fiance, Dennis Conrad. Defendant telephoned Ms. Smith, who drove to Tucson and brought defendant and Hill back to her trailer in Mesa.

About two weeks later, Ms. Smith suggested that it would be best if defendant and Hill continued on to California. Defendant agreed, telling her that they would leave on Saturday, May 26. Ms. Smith and Mr. Conrad went out on the evening of May 24, returning home at approximately 9:30 p.m. Desiring some privacy from defendant and Hill, they locked the doors of the trailer until they went to sleep at 10:30 p.m.

Earlier that day, defendant had searched the trailer looking for something to steal. He found some live ammunition and after further searching also found a single-shot, 12 gauge shotgun in Dennis Conrad's closet. Defendant took the shotgun and some ammunition and hid them outside the trailer. He told Hill that he planned to rob the local Circle K and that he would kill anyone who gave him any trouble. Hill rejected the whole idea and refused to participate. Throughout the rest of the day, defendant apparently had sporadic thoughts of killing someone.

Early in the evening of May 24, defendant and Hill purchased a bottle of 101 proof whiskey and drank about two-thirds of it. They visited with other residents of the trailer park and returned to the trailer about 11:00 p.m. Defendant retrieved the shotgun and brought it into the living room of the trailer where he toyed with it, loading and unloading it several times as he and Hill listened to music. At this point, defendant told Hill he was going to kill Ms. Smith and Mr. Conrad. Hill balked, told defendant not to do it, and tried to stop him. The discussion lasted until defendant leveled the loaded shotgun at Hill, who immediately sat back in his chair, making no further protest.

Defendant walked down the hall to the bedroom in which Ms. Smith and Mr. Conrad were sleeping. As Hill bolted from the trailer, defendant opened the door of the darkened bedroom, aimed and fired the shotgun at the bed; Mr. Conrad was struck in the abdomen by a full load of number two shot. His abdominal aorta was severed and he rapidly bled to death. Defendant heard the victim moaning; he backed up the hallway into the living room, ejected the spent shell and reloaded. Awakened by the shot, Ms. Smith realized that Conrad had been shot and ran into the hallway. She saw defendant standing at the end of the hallway pointing the shotgun at her. She turned in an attempt to escape into the bedroom, but he fired, hitting her squarely in the hip. Falling to the floor, she crawled into the bedroom and closed the door. After waiting a few minutes, she managed to get to the living room and telephoned the police for assistance. Mr. Conrad was pronounced dead at the scene; Ms. Smith survived and was taken to the hospital.

Immediately after shooting Ms. Smith defendant ran outside, hid the shotgun under the trailer and then spent the rest of the night under a truck in another part of the trailer park. The Mesa police searched for him and cordoned off the trailer park. In the morning, the defendant surrendered to a police officer at the scene and was arrested. After scrupulously following proper procedures as to both the chain of custody of the physical evidence and defendant's *Miranda* warnings, the police tape recorded defendant's confession. Defendant admitted he had no reason to kill Mr. Conrad or Ms. Smith but stated that he was "wired up." Defendant raises many issues on appeal, not all of which need to be addressed. He claims that:

(1) the trial court erred in failing to grant his motion for a pretrial mental health examination;

(2) the trial court erred in refusing to grant his motion for a mistrial after the jury saw him in jail clothing and handcuffs;

(3) the trial court erred in refusing to grant his motion for a pre-sentencing

mental health examination or diagnostic evaluation;

(4) the trial court erred in imposing the death penalty.

## THE TRIAL COURT DID NOT ERR WHEN IT DENIED DEFENDANT'S MOTION FOR A PRETRIAL MENTAL HEALTH EXAMINATION.

Prior to trial, defendant's counsel filed a motion for a Rule 11 hearing to determine defendant's competence to stand trial. Rule 11.3 states, "If the court determines that reasonable grounds for an examination exist, it shall appoint at least two mental health experts, ... to examine the defendant...." Counsel alleged that defendant had recently begun "to exhibit bizarre behavior to the extent of refusing to discuss the case or courtroom procedures with counsel," and that he had made statements, "to the effect that he does not care if he receives the death penalty." Counsel also asserted that defendant had made irrational statements concerning the events that occurred on the night of the killing and that he had been institutionalized in a Texas psychiatric hospital in 1982.

After the motion was filed, the trial judge requested Dr. Garcia, Chief of Psychiatry of the Maricopa County Health Department, to make a preliminary evaluation. Dr. Garcia found "no evidence of any thought disorder or any depressive feelings" and stated that defendant was angry at society and his victims, not paranoid. He also found defendant dissatisfied with his appointed counsel. Dr. Garcia stated that defendant was fully competent and aware of the proceedings against him and concluded that "there are no reasonable grounds to grant the motion for psychiatric evaluation." Basing his decision on Dr. Garcia's report, the trial judge denied defendant's motion for a mental examination.

Defendant asserts that this was error which requires us to grant a new trial. He claims that the doctor did not have sufficient facts before him to make his recommendation; therefore the judge was required to order a formal examination. De-

fendant concedes that a court is required to order a mental examination only if reasonable grounds exist to question the defendant's mental condition. Rule 11.3; *State v. Ohta*, 114 Ariz. 489, 491, 562 P.2d 369, 371 (1977). He also concedes that the trial court has broad discretion when determining if reasonable grounds exist; its determination will be upheld absent abuse of that discretion. *State v. Romero*, 130 Ariz. 142, 147, 634 P.2d 954, 959 (1981). Defendant argues that "reasonable grounds" were established by the averments of counsel's affidavit in support of the motion for examination.

■ In the case before us, the trial judge did not rely on his own observations. Instead, the court had Dr. Garcia talk to and observe the defendant. The doctor also talked to inmates and corrections personnel who had observed the defendant. He felt that no grounds existed for an extensive psychiatric examination because defendant gave no indications of having any psychiatric disorder. Having read the doctor's report and also having had personal contact with defendant, the judge found that no reasonable grounds existed and that an examination was not required. The judge therefore denied the motion. The procedure adopted demonstrated the trial court's care and effort to properly determine the existence of "reasonable grounds." We find no abuse of discretion resulting from the court's reliance on the impressions and observations of a mental health professional in deciding whether reasonable grounds existed for a formal examination. To the contrary, we believe the procedure is both salutary and well within the court's discretion.

■ Defendant relies on *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) for the proposition that a competency hearing is required if a defendant suffers from delusions that prevent him from trusting his counsel. The *Dusky* test for competency is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he

has a rational as well as factual understanding of the proceedings against him." *Id.* at 402, 80 S.Ct. at 789. There is no evidence that defendant suffers from delusions or lacks rational capacity. Dissatisfaction with counsel does not, in itself, constitute reasonable grounds which entitle a defendant to a competency examination. The evidence before the judge indicated only that defendant disliked his counsel. If every personal conflict between a criminal defendant and his appointed counsel gave rise to reasonable grounds for a competency hearing, then almost every defendant would receive one. The reasonable grounds requirement is a preliminary filter that provides a threshhold which prevents unnecessary examinations and waste of judicial resources while simultaneously protecting defendants' rights. The judge acted within his discretion in denying the motion.

## THE TRIAL COURT DID NOT ERR WHEN IT REFUSED TO GRANT A MISTRIAL AFTER SEVERAL JURORS SAW DEFENDANT IN HANDCUFFS.

On a single occasion during the second day of trial, several jurors saw defendant in prison garb and handcuffs while being escorted by a deputy. His mistrial motion was denied. Defendant argues that he is entitled to a new trial because being tried in prison garb is "inherently unfair." *Brooks v. Texas*, 381 F.2d 619 (5th Cir. 1967). Compelling the accused to go to court in jail clothing may undermine the presumption of innocence. *Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976). Defendant admits that he was not compelled to appear in court before the jury in prison garb and handcuffs, but argues that the absence of adequate precautions to prevent the jury from seeing him as he was taken to the courtroom compromised his right to a fair trial.

■ The question is whether the defendant was prejudiced by what the jury saw, not the mere fact that it was seen. *State v. Sherron*, 105 Ariz. 277, 279–80, 463 P.2d 533, 535–36 (1970). The decision to restrain a prisoner *in court* rests within the discretion of the court. *Id.* We have previously held that if safety so requires, it is permissible to shackle a defendant in front of the jury during trial without comprising his right to a fair trial. *State v. Starks*, 122 Ariz. 531, 534, 596 P.2d 366, 369 (1979). *State v. Bracy*, 145 Ariz. 520, 532, 703 P.2d 464, 476 (1985). That situation has far greater potential to impair the right to a fair trial than the present case, where several jurors inadvertently saw the defendant in custody while on the way to the courtroom.

■ We note that there was no positive act by the state which allowed the jury to observe defendant in jail garb and handcuffs, that an armed deputy accompanied defendant in court throughout the trial, and that immediately after the denial of the motion for mistrial, defendant chose to remain in prison clothes for the remainder of the trial. We therefore find no prejudice requiring reversal. As the judge said at the time, "it's obvious that Mr. Johnson is in custody, so I don't think that will sway the jury one way or another."

## THE TRIAL COURT DID NOT ERR WHEN IT DENIED DEFENDANT'S REQUEST FOR PRE-SENTENCE DIAGNOSTIC EVALUATION.

Prior to sentencing, defendant produced a letter from a Dr. Bindelglas stating that his review of defendant's medical records indicated that there was a possibility that defendant suffered from organic, cerebral deficits. Defendant concedes that Rule 26.5 places the decision to order a pre-sentence examination within the discretion of the trial court. *State v. Hartford*, 130 Ariz. 422, 426, 636 P.2d 1204, 1208 (1981), *cert denied* 456 U.S. 933, 102 S.Ct. 1987, 72 L.Ed.2d 452 (1982). Defendant claims that the trial court erred in refusing to order a diagnostic evaluation based on the letter.

When asked by the court whether he wished to have an examination, defendant stated that it was a waste of time and that

he was fighting both his lawyer and the court to do as he wished. Defendant now argues that in a capital case the possible existence of brain dysfunction must be settled by appropriate examination to determine if it might be a mitigating factor. *See,* A.R.S. § 13–703(F). Defendant asserts that an accused cannot waive the examination. Because of our disposition of the case, we need not decide here whether a defendant can overrule his counsel's request and waive a competency examination in a capital case. We note, however, that the judge had read Dr. Garcia's pretrial report which found defendant fully competent; Dr. Bindelglas's letter stated that there was only a possibility of a brain deficit, not a probability of its existence.

## THE TRIAL COURT ERRED IN IMPOSING THE DEATH PENALTY

■ Whenever the trial court imposes the death sentence we must conduct an independent review of the facts that established the aggravating and mitigating circumstances in order to determine for ourselves if the latter outweigh the former and justify the sentence. *State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976). Pursuant to A.R.S. § 13–703(F), the trial court found two aggravating circumstances. The first was that defendant knowingly created a grave risk of death to another person within the zone of danger. *See* A.R.S. § 13–703(F)(3). Defendant argues that this finding is legally incorrect because his criminal acts endangered no one other than the intended victims. Defendant argues that the "zone of danger" rule applies only when the defendant's acts endangered or harmed persons other than the actual or intended victims of the crime. *State v. McCall,* 139 Ariz. 147, 160–61, 677 P.2d 920, 933–34 (1983); *State v. Nash,* 143 Ariz. 392, 404, 694 P.2d 222, 234 (1985) *cert. denied* ─── U.S. ───, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985).

Defendant's intent is not open to review in this case. He was convicted of the first degree, premeditated murder of Mr. Conrad and the attempted first degree, premeditated murder of Ms. Smith, thus necessarily establishing that he intended to kill both. *See* A.R.S. §§ 13–1101(1); 13–1105(A)(1); 13–1001. Therefore, the case presents the simple question of whether the aggravating circumstance in question can exist when the other person endangered was a victim or intended victim of the criminal conduct. Defendant argues that the aggravating circumstance cannot apply because the only evidence of defendant's intent was that defendant's first shot was not intended to differentiate between victims. He intended to kill both and did not care which one he killed first.

■ Defendant's argument is supported by our previous construction of subsection F(3). In *State v. (Ricky) Tison,* 129 Ariz. 526, 542, 633 P.2d 335, 351 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982), each of the three victims was close enough to the others that the shooting of each created a grave risk of danger to the others. We held that because each victim was intentionally murdered subsection F(3) was inapplicable. In a similar case, we subsequently stated:

> However, the evidence at appellant's trial indicated that the killers intended to murder all three individuals. The shooting in the bedroom was not random or indiscriminate; rather, it was purposeful and intentional. That [one victim] ˙ miraculously survived does not alter this. We conclude that A.R.S. § 13–703(F)(3) has no application to this case.

*State v. McCall,* 139 Ariz. at 161, 677 P.2d at 934. In light of our long-standing interpretation of the "zone of danger" factor, we must conclude that the trial court erred in applying that aggravating circumstance to the case before us.

■ The trial judge also found that defendant committed the crime in an "especially heinous or depraved manner," an aggravating circumstance under § 13–703(F)(6). Heinous and depraved conduct pertains "to the mental state and attitude of the perpetrator as reflected in his words and actions." *State v. Gretzler,* 135 Ariz.

42, 51, 659 P.2d 1, 10 (1983). Admittedly, the killing here was senseless, but senselessness in itself is not sufficient to constitute heinous or depraved conduct. *State v. Smith*, 146 Ariz. 491, 707 P.2d 289, 301 (1985). Also, because most first degree murders are cruel, heinous and depraved the statutorily required inquiry with respect to imposition of the death penalty is whether the conduct was *especially* cruel, heinous or depraved. *Id.* Our previous cases have approved findings of heinous or depraved conduct where the perpetrator acted with gratuitous violence, relished the killing or in some other way acted in such a fashion that his acts set him apart from the "norm" of first degree murderers. *See, e.g., State v. Ceja*, 126 Ariz. 35, 612 P.2d 491 (1980); *State v. Clark*, 126 Ariz. 428, 616 P.2d 888 (1980); *State v. Brookover*, 124 Ariz. 38, 41, 601 P.2d 1322 (1979).

The record does not support the finding of heinous or depraved conduct in the case before us. Defendant killed senselessly, without apparent purpose or motive, possibly while inebriated or to some extent mentally deranged. As reprehensible as this may be, it is not outside the "norm" of first degree murders. It certainly is not the type of conduct previously recognized as "heinous or depraved" in our cases. We conclude, therefore, that the trial court also erred in applying subsection (F)(6).

Since no aggravating circumstances are present, the death penalty cannot be imposed. A.R.S. § 13–703(E). We therefore vacate the death sentence and remand for resentencing with instructions that defendant be sentenced to imprisonment for life without possibility of parole for twenty-five years for the murder of Mr. Conrad. We further instruct that this sentence be served consecutively to the sentence previously imposed for the attempted murder of Ms. Smith. Our disposition moots the other issues which defendant has raised regarding the constitutionality and proportionality of the death penalty.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.