726 P.2d 202
**STATE of Arizona, Appellee,**

v.

**Jasper Newton McMURTREY
III, Appellant.**

No. 5409–3.

Supreme Court of Arizona,
In Banc.

Sept. 11, 1986.

Robert K. Corbin, Atty. Gen., by William J. Schafer III and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Polis & Sadaca by Bertram Polis, Tucson, for appellant.

CAMERON, Justice.

This is an appeal from the reimposition of the death penalty on the defendant, Jasper Newton McMurtrey III, for his two first-degree murder convictions. A.R.S. §§ 13–703, –1105. We have jurisdiction pursuant to art. 6, § 5(3) of the Arizona Constitution and A.R.S. §§ 13–4031, –4035.

The issues that must be decided are:

1. Was the trial judge so prejudiced, from having sentenced defendant to death twice before, that he could not fairly conduct a third sentencing?

2. Was the death penalty properly imposed?

3. Is imposition of the death penalty, in this case, cruel and unusual punishment in violation of defendant's constitutional rights?

This is the third time this case has come before us. The facts are set out in *State v. McMurtrey,* 136 Ariz. 93, 664 P.2d 637, *cert. denied,* 464 U.S. 858, 104 S.Ct. 180, 78 L.Ed.2d 161 (1983). In that appeal, we affirmed defendant's conviction and sentence for attempted first-degree murder and also affirmed his convictions on two counts of first-degree murder. However, we remanded for resentencing on the first-degree murder convictions as it appeared the trial judge did not sufficiently consider the evidence offered in mitigation. *Id.* at 102, 664 P.2d at 646.

Upon remand, defendant was again sentenced to death on both murder convictions. This court again set aside defendant's death sentences. *State v. McMurtrey,* 143 Ariz. 71, 691 P.2d 1099 (1984). We found that the trial judge improperly required defendant to prove intoxication as a mitigating circumstance beyond a reasonable doubt instead of by a preponderance of the evidence. *Id.* At the resentencing hearing, it was agreed that the court could consider evidence presented at the first two presentence hearings as well as any new evidence. The defendant's attorney stated:

MR. POLIS: Yes.

I would ask the Court, of course, you've heard evidence before and I don't think it is necessary to repeat that evidence so I have not called all the witnesses that were previously called in the prior two sentencings. It is clearly in the record, you clearly heard it and clearly considered it and I would just—

THE COURT:

\* \* \* \* \* \*

I'm willing to listen to any evidence and you can repeat, you can bring in new evidence, you can cover any subject you want in this case.

MR. POLIS: Your Honor, I would ask you to consider the evidence I'm going to present today in light of the evidence I presented in the past.

The trial court, after the aggravation/mitigation hearing, reimposed the death sentence. Defendant appeals.

## I.

## WAS THE TRIAL COURT PREJUDICED?

Upon remand for a third sentencing, defendant sought to have the trial judge removed. On 29 March 1985, defendant moved for a change of judge pursuant to Rule 10.2, Ariz.R.Crim.P., 17 A.R.S.. This motion was denied by the trial judge, Judge Arnold.[1] Subsequently, defendant filed a second motion for change of judge pursuant to Rule 10.1, Ariz.R.Crim.P., 17 A.R.S.. This motion was denied by Judge Hawkins, the presiding judge. Defendant argues that it is unreasonable to believe that Judge Arnold had no interest or bias in this case as a result of his previously having sentenced defendant to death twice. He claims that the judge was predisposed to again impose the death sentence.

As evidence of this predisposition, defendant offers the following statement by the trial judge during the testimony of the first witness at the mitigation hearing:

BY MR. PEASLEY:

Q. Did Mr. McMurtrey rank high on habitual criminalism test that you administered to him?

A. Yes, he did.

Q. And that would be part of the MMPI or TAT?

A. That is part of the MMPI.

Q. And that suggests, does it not, that there is a high tendency on Mr. McMurtrey's part to continue his

present life style or life style that he engaged in?

MR. POLIS: I will object to that.

THE COURT: His *present life style, he might have a hard time continuing that.*

(Emphasis added).

█ We do not find the isolated comment of the trial judge, relied upon by defendant, to be sufficient evidence of prejudice so as to require a change of judge. *Id.; see also State v. Knapp,* 125 Ariz. 503, 504–05, 611 P.2d 90, 91–92 (1979). Based on the record, it appears the trial judge was not predisposed toward the death sentence but instead acted very conscientiously.

THE COURT:

This is my only death case since I've been on the Bench in ten years and it is not something that anyone approaches lightly. I've lost a lot of sleep over this case just thinking about it. I consider myself a man of conscience and really, when it comes right down to it, I'm like Dr. Sullivan there. I'm not so sure I really believe in the death penalty, but when I was sworn in here, I took an oath. I said I would uphold the Constitution of the State of Arizona and the laws of the State of Arizona.

That is my duty, nothing personal in it, Mr. McMurtrey.

\* \* \* \* \* \*

[I]f I had a personal, if I could just say "Look, I don't want it on my conscience.... I don't want to lose anymore sleep." Now I've lost eight hours sleep at night sometimes thinking about you.

\* \* \* \* \* \*

I wouldn't put you in the death house unless the law said so and you qualify, Mr. McMurtrey. And you just qualify for the death penalty. That is it, plain and simple.

---

1. We can find no written motion pursuant to Rule 10.2 in the record on appeal. Neither do we find a minute entry denying such a motion.

Nevertheless, such a motion is referred to in the defendant's Rule 10.1 motion and his opening brief.

The defendant has not carried his burden of proving bias or prejudice on behalf of the judge so as to require his removal. *State v. Jeffers*, 135 Ariz. 404, 427, 661 P.2d 1105, 1128, *cert. denied*, 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). Further, we find nothing inherently unreasonable in the trial judge resentencing defendant absent specific evidence that the judge was actually biased or prejudiced against him. *State v. Richmond*, 136 Ariz. 312, 317, 666 P.2d 57, 62, *cert. denied*, 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983). We find no error.

## II.

### IMPOSITION OF THE DEATH PENALTY

In reviewing the imposition of the death penalty, this court is required to examine the record independently and determine the existence or non-existence of both aggravating and mitigating circumstances. *State v. Correll*, 148 Ariz. 468, 715 P.2d 721 (1986); *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977).

#### A. *Aggravating Circumstances*

Defendant claims the trial court erred in finding the aggravating circumstance contained in A.R.S. § 13–703(F)(3), that in committing the murders defendant "knowingly created a grave risk of death to another person or persons in addition to the victim of the offense." Defendant bases his argument on the fact that he "deliberately aimed at and shot only his intended victims and no other persons were injured."

Defendant made this same argument in his original appeal. At that time, we stated:

The court found under A.R.S. § 13–703(F)(3), that in committing these murders appellant knowingly created a grave risk of death to persons other than the victims. We agree. The evidence at the trial established that the Ranch House Bar was crowded the night of the killings and that there were from five to nine other people in the immediate area of the victims when they were shot. When he emptied his gun at the victims, appellant created a grave risk to those other people. *State v. Blazak*, 131 Ariz. 598, 643 P.2d 694 (1982); *State v. Doss*, 116 Ariz. 156, 568 P.2d 1054 (1977).

*State v. McMurtrey*, 136 Ariz. at 101, 664 P.2d at 645.

Reviewing the record once again, we note in addition two other factual details of the crime. First, there is evidence defendant shot one of the victims for a second time after the victim pleaded with him to stop. Second, after shooting the three victims, defendant pointed the gun at a woman and pulled the trigger, only the gun clicked empty. Based on all the facts, we find this aggravating circumstance.

Defendant claims, in the alternative, that this aggravating circumstance is unconstitutionally arbitrary and overbroad. We disagree. This aggravating circumstance may be found only where others are physically present in the zone of danger. *State v. Doss, supra.* It may not be found where they are in another room, *State v. Clark*, 126 Ariz. 428, 616 P.2d 888, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980); or intended victims, *State v. Johnson*, 147 Ariz. 395, 710 P.2d 1050 (1985); *State v. McCall*, 139 Ariz. 147, 677 P.2d 920 (1983), *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). The aggravating circumstance is sufficiently precise to avoid its arbitrary application.

#### B. *Mitigating Circumstances*

A.R.S. § 13–703(G)(1) provides that it shall be considered a mitigating circumstance if:

The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution.

Defendant argues that he has shown this mitigating circumstance, based on his mental condition and intoxication, to a suffi-

ciently substantial degree so as to call for leniency.

The evidence concerning both defendant's mental state and his level of intoxication is conflicting. Concerning defendant's mental state, there was expansive testimony both at trial and at defendant's three aggravation/mitigation hearings. Defense experts at trial were Dr. Santiago and Dr. Gurland. Dr. Santiago testified that defendant suffered primarily from a major depressive disorder and secondly, from an antisocial personality. He also stated that defendant was impulsive and would have trouble controlling his emotions under stress. Dr. Santiago, however, was unable to give an opinion as to defendant's mental state at the time of the murders.

Dr. Gurland stated that defendant was in a disassociative or "fugue" state at the time of the crime and did not know what he was doing but was instead acting "on automatic pilot". Dr. Gurland concluded that defendant was *M'Naghten* insane. However, on cross-examination, Dr. Gurland testified as follows:

Q. Your opinion as to his sanity or insanity on August 9th or August 10th is based, the majority of that is based on what Mr. McMurtrey told you during your interviews with him?

A. Sure, yes.

Q. Sir, what if he lied to you?

A. Well, if he lied to me, it might come out differently, you know, than what I feel occurred at the time I talked with him.

State experts at trial were Dr. LaWall and Dr. Ginnetti. Dr. LaWall emphatically stated that defendant was *M'Naghten* sane and that Dr. Gurland's diagnosis was in error. Dr. LaWall testified that he found no evidence of delusional thinking on the part of the defendant and that the only evidence of a disassociative state of consciousness is defendant's own unreliable statements. The defense sought to impeach Dr. LaWall by showing that at the time of his examination of defendant, defendant was receiving psychotropic drugs

at the Pima County Jail. Dr. LaWall, however, testified that these drugs did not affect his evaluation.

Dr. Ginnetti testified that based on her examination and the results of the Minnesota Multiphasic Personality Inventory (MMPI) the defendant was legally sane.

At defendant's three aggravation/mitigation hearings, other testimony on his mental state was received. At his initial sentencing hearing, Dr. Santiago basically recounted his trial testimony and expressed the opinion that defendant may have acted on account of an irresistible impulse.

At defendant's third aggravation/mitigation hearing, Dr. Morris stated that it was his opinion that defendant's emotional state was impaired at the time of the murders. He based his opinion on the alcohol and drugs that defendant claimed to have consumed at the time of the crime. Dr. Morris also administered another MMPI test. The state impeached Dr. Morris by showing that in his evaluation of defendant he utilized only the grand jury transcripts and did not read the testimony of the several eyewitnesses given at trial.

In addition to the expert testimony, there was evidence that the defendant has emotional problems stemming from his father shooting and killing his mother when defendant was seven years old. Defendant was also voluntarily hospitalized for emotional problems when he was fifteen years old.

▪ After reviewing all the evidence on defendant's mental state, we do not find sufficient evidence of a significant impairment under § 13–703(G)(1). The state experts were clear and unequivocal in their findings while the defense experts were less exact in their conclusions. *See State v. (Joseph Clarence) Smith*, 131 Ariz. 29, 34, 638 P.2d 696, 701 (1981) (positive testimony of state's experts outweighs equivocal testimony of defense witnesses). Further, while eliciting some evidence of emotional or mental impairment, the defense was unable to provide a precise showing of its substantial significance in causing de-

fendant's conduct. *See State v. Doss, supra,* (lowered to life imprisonment "where defendant's mental condition was a substantial factor in causing death of victim"); *State v. Brookover,* 124 Ariz. 38, 42, 601 P.2d 1322, 1326 (1979) ("defendant's mental condition was ... a major and contributing cause of his conduct").

Similarly, the evidence on defendant's level of intoxication was conflicting. Some witnesses testified that the defendant was drunk, and that he was staggering around, spilling drinks. Others stated that defendant was not intoxicated. In fact, these witnesses testified that defendant drank only ginger ale about half the time and intentionally spilled some of the other drinks rather than consume them. The only evidence of intoxication that was not disputed was that defendant was seen biting beer glasses and beer cans. Additionally, Dr. Sullivan testified as to the effects of alcohol and drugs on a person with defendant's emotional history. We have stated: "The fact that a defendant was to some degree intoxicated is not, by itself, a mitigating circumstance." *State v. Woratzeck,* 134 Ariz. 452, 458, 657 P.2d 865, 871 (1982). After reviewing the record, we are not persuaded there is evidence of substantial intoxication so as to constitute a significant impairment and thus a mitigating circumstance under § 13–703(G)(1). *See State v. Jeffers, supra,* (while defendant was drinking and using drugs on the day of the murder there was no credible evidence of significant impairment); *State v. Woratzeck, supra,* (while defendant presented some evidence of intoxication, it was inexact as to the level of intoxication and thus insufficient). In reaching this conclusion, we are greatly persuaded by testimony concerning the actions of the defendant at the time of the murders. After being at the bar for several hours,

> Defendant left the bar and was sober enough to transact a gun purchase. Upon reentering, defendant assumed a combat-like crouch and was able to accurately aim at his victims using both hands. He had no trouble in maintaining his balance and did not appear to be significantly intoxicated. When the gun was emptied of bullets, defendant calmly put it down, briskly walked out of the bar, and fled.

*State v. McMurtrey,* 143 Ariz. at 73, 691 P.2d at 1101.

The trial court considered all the evidence presented at trial and at all the aggravation/mitigation hearings and found no mitigating factors substantial enough to call for leniency. After carefully reviewing the record, as we are required to do by *State v. Richmond, supra,* we agree that there were not sufficient mitigating circumstances to outweigh the presence of the aggravating circumstance under § 13–703(F)(3).

## III.

### CRUEL AND UNUSUAL PUNISHMENT

■ Prior to trial, the state made defendant a plea offer of life imprisonment. Defendant claims that the state is now seeking the death penalty simply because he exercised his constitutional right to a trial. Defendant claims that under these circumstances, a sentence of death is cruel and unusual punishment in violation of his eighth and fourteenth amendment rights, since the state had earlier offered him a lesser sentence of life imprisonment. We do not agree.

■ A defendant who pleads guilty extends a substantial benefit to the criminal justice system and the state is therefore entitled to extend in exchange a less harsh sentence than might otherwise be given. *Brady v. United States,* 397 U.S. 742, 752–53, 90 S.Ct. 1463, 1471–72, 25 L.Ed.2d 747 (1970). If a plea offer is rejected, the state may prosecute the defendant to the full extent possible and seek whatever is the appropriate sentence. *Blackmon v. Wainwright,* 608 F.2d 183, 184 n. 1 (5th Cir. 1979), *cert. denied,* 449 U.S. 852, 101 S.Ct. 143, 66 L.Ed.2d 64 (1980) (if a defendant declines a plea bargain, he may not complain about receiving a more severe sentence after trial absent evidence of judicial

vindictiveness or punitive action). *See also Adamson v. Ricketts*, 758 F.2d 441, 448 (9th Cir.1985), *rev'd on other grounds*, 789 F.2d 722 (9th Cir.1986). An allegation of discrepancy between defendant's actual sentence and that possible under the rejected plea agreement does not invalidate the sentence. *Smith v. Wainwright*, 664 F.2d 1194, 1197 (11th Cir.1981). *See also Hitchcock v. Wainwright*, 770 F.2d 1514 (11th Cir.1985), *cert. granted in part*, —— U.S. ——, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986). We find no error in defendant's sentence.

## PROPORTIONALITY REVIEW

In all death penalty cases, this court is required to conduct a proportionality review so as to determine "whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Richmond*, 114 Ariz. at 196, 560 P.2d at 51.

Therefore, we have reviewed the circumstances involved in other cases where we have upheld a sentence of death. In conducting this review, we note that had this crime been committed after September 1984, it is highly probable that a second aggravating circumstance, A.R.S. § 13–703(F)(8) ("defendant has been convicted of one or more other homicides, ... which were committed during the commission of the offense"), would also have been found.

A factually similar case is *State v. Smith*, 125 Ariz. 412, 610 P.2d 46 (1980). In that case, the defendant had been drinking at a friend's apartment when he and his friend decided to use the public telephone across the street. While they were out, they stopped by the victim's apartment to talk to some women they knew, who were standing in the doorway of the victim's apartment attending a party. Defendant and the victim argued, during which the victim threatened to kill the defendant. Defendant and his friend went to the friend's apartment where they obtained rifles. Upon returning to the victim's apartment, defendant called the victim outside. Defendant then shot the victim and fled to his friend's apartment, where he was later arrested. *State v. Smith*, 125 Ariz. at 414, 610 P.2d at 48. We upheld the death sentence in that case based upon the finding of one aggravating circumstance (defendant was previously convicted of another offense for which Arizona law allows a sentence of life imprisonment or death to be imposed). *Id.* at 416, 610 P.2d at 50.

In *State v. Britson*, 130 Ariz. 380, 636 P.2d 628 (1981), we upheld a death sentence where the defendant, after drinking beer with his wife and the man she was presently living with, went to the bathroom and returned with a gun and shot the man. There was only one aggravating factor, that of prior convictions involving the use or threat of violence, and no mitigating circumstances. 130 Ariz. at 387–89, 636 P.2d at 635–37. Other cases, where we have upheld the death sentence, that involved a finding of "grave risk to others" as well as other aggravating circumstances are *State v. Nash*, 143 Ariz. 392, 694 P.2d 222, *cert. denied*, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985), and *State v. Blazak*, 131 Ariz. 598, 643 P.2d 694, *cert. denied*, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982).

We have also considered cases where a sentence of death has been reduced to life imprisonment. *See State v. Johnson*, 147 Ariz. 395, 710 P.2d 1050 (1985) (no aggravating factors, so death sentence improper); *State v. Graham*, 135 Ariz. 209, 660 P.2d 460 (1983) (substantial mental impairment from long-standing drug addiction, neurological problems and brain damage); *State v. Valencia*, 132 Ariz. 248, 645 P.2d 239 (1982) (youth of defendant); *State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979) (substantial mental impairment caused by brain lesion); *State v. Doss*, 116 Ariz. 156, 568 P.2d 1054 (1977) (mental illness and epilepsy). We do not believe that any of these cases call for a reduction of the sentence to life imprisonment in this matter.

 Defendant, however, argues that *State v. Doss, supra,* is indistinguishable from the facts herein, and therefore re-

112

quires his sentence be reduced to life imprisonment. We do not agree. While the same aggravating circumstance was found in both cases, the evidence in mitigation was not the same. In *Doss*, there was extensive testimony by defense experts that defendant was suffering from mental illness. 116 Ariz. at 159, 568 P.2d at 1057. Even the state's psychiatrist testified that Doss had a severe personality disorder. *Id.* This is much stronger evidence for leniency than exists in the instant case. In this case, defense experts basically stated that defendant had emotional problems (depressive disorder) and an antisocial personality. State experts found no mental illness or impairment at all. We believe *Doss, supra,* is inapplicable.

We have already found the murders were committed in a manner that created a grave risk of death to others, A.R.S. § 13–703(F)(3). Based upon our review of the decisions of this court, we find imposition of the death penalty is proportional to the sentences imposed in similar cases.

We have searched the record for fundamental error pursuant to A.R.S. § 13–4035, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, *reh'g denied,* 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967), and *State v. McGann,* 132 Ariz. 296, 645 P.2d 811 (1982). We find none.

The defendant's sentence of death is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.