628 P.2d 943
**STATE of Arizona, Appellee,**

v.

**Spencer WATSON, Appellant.**

**No. 3089–2.**

Supreme Court of Arizona,
In Banc.

April 29, 1981.
Rehearing Denied June 2, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Asst. Atty. Gen., Phoenix, for appellee.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P. C. by Michael J. Meehan, Tucson, for appellant.

CAMERON, Justice.

This is an appeal from the imposition of the death penalty as a result of a conviction for murder in the first degree. A.R.S. §§ 13–451, –452. We have jurisdiction pursuant to A.R.S. § 13–4031.

Defendant raises several issues on appeal directed to the propriety, constitutionality and lawfulness of the death penalty in general and its imposition in the instant case.

Because of the disposition of the case, we need only consider whether the imposition of the death penalty in defendant's particular case is proper.

The facts necessary for a determination of this matter are as follows. Defendant was convicted of first degree murder, sentenced to death, and appealed. We affirmed the conviction of first degree murder, but remanded for resentencing because of the failure of the trial court to disclose portions of the presentence report and investigation. See *State v. Watson*, 114 Ariz. 1, 559 P.2d 121 (1976), cert. denied 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977) (*Watson I*). For a more detailed statement of the facts of the crimes see *Watson I*, supra.

Defendant was resentenced, and this court, in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), cert. denied 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979) (*Watson II*), reviewed the constitutionality of the death sentence in light of the United States Supreme Court cases of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978). We upheld the constitutionality of the death penalty statute. We also set aside the finding of the trial court as to the existence of two aggravating circumstances (1) that others were subject to great risk of death, and (2) the offense was committed in an especially heinous, cruel and depraved manner. Two aggravating circumstances remained: (1) that the defendant had been convicted and sentenced for a crime which, under Arizona law, a sentence of life imprisonment was possible, and (2) that the defendant was previously convicted of a felony involving the use or the threat of violence. Defendant's prior conviction for robbery was used as a basis for both aggravating circumstances.

We remanded the matter for resentencing in order that the defendant could present any additional mitigating factors that he wished to have considered by the court. *Watson II*, supra. The defendant presented further evidence in mitigation

consisting mainly of testimony regarding his good conduct, his change of attitude, and his endeavors to obtain an education while in prison. A prison counselor testified:

"A  When you're down there on death row you don't have very much hope. Much of the guys burn out, they kind of give up very quickly. But Mr. Spencer never let that get to him, he never did blow up, lose his temper, he is a quiet individual, serious. He did express himself but he doesn't do it physically. He would be willing to discuss it with me.

"Q  Did you compare this adjustment as characteristic to other death row inmates?

"A  I would say he is one of the better ones, not on death row, but in the population that we have.

"Q  Were there any problems you're aware of that he has had, any trouble that he has gotten into?

"A  No.

"Q  Just what prospects do you see for him if he were able to join the general prison population, or what he would do in the years he would have to spend to serve out his life sentence?

"A  Well, from my discussions with him in the past I would say probably he would go toward education. That's what he showed an interest in."

And Dr. David Gurland testified:

"Q  Would you describe to the court the differences you saw in Mr. Watson on October the 11th of 1979 compared to the years previously or the five years previous to that?

"A  I think on this last occasion I felt that Spencer had been doing a lot more soul-searching, I call it, or in trying to understand himself better, and how he related to others, and how they related to him. I felt that he was much more mature in how he was approaching in his thinking things out, and in dealing with them. He seemed to be trying to develop some goals for himself. In seemingly making some realistic attempts to work towards those goals, as far as better indicating who he was, what he was, and better educating himself, and in developing a better self image of himself.

A more realistic one than we had back when I first saw him. He was a pretty cocky fellow with a lot of bravado. I didn't see this the last time. He seemed more down-to-earth and he seemed more sincere as he presented himself.

*    *    *    *    *    *

"A  He has been incarcerated now five years on these present charges. It's given him time to think. And the reality of what has happened to him, and what can happen to him are much more real and has had an effect upon him. I thing [think] he has a greater respect for the law and rules of society to the point that I think he would, in my mind, avoid any possibility of having to return to that type of setting again."

The trial judge admitted that defendant had conducted himself properly while imprisoned, stating that defendant's conduct had been "amazingly good." The court, however, stated that:

" * * * although he has conducted himself very well from all the reports that I have, I don't think that his conduct during the time he is in prison constitutes a mitigating circumstance as far as sentencing is concerned."

The defendant was resentenced to death and an appeal to this court followed.

In the two previous times that this matter has been before us, we have considered the sentencing procedure and the constitutionality of the death penalty under Arizona law. We have not reviewed the record to determine the propriety of the imposition of the death penalty. Unlike appellate review of non-capital crimes, in reviewing the imposition of the death penalty, we must make an independent determination of the imposition of that penalty:

"[T]he gravity of the death penalty requires that we painstakingly examine the record to determine whether it has been erroneously imposed * * * [B]ecause A.R.S. § 13–454 sets out the factors which must be found and considered by the sentencing court, we necessarily undertake an independent review of the facts that establish the presence or absence of aggravating and mitigating circumstances. (citations omitted). We must determine for ourselves if the latter outweigh the former when we find both to be present." *State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976), cert. denied 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977); see also *State v. Blazak,* 114 Ariz. 199, 560 P.2d 54 (1977).

The question before us is not whether the trial court properly imposed the death penalty, but whether, based upon the record before us, we believe that the death penalty should be imposed. A finding merely that the imposition of the death penalty by the trial court was "factually supported" or "justified by the evidence" is not the separate and independent judgment by this court that the death penalty warrants. This is in keeping with the mandate of the United States Supreme Court that we must review carefully and with consistency death penalty cases and not engage in a "cursory" or "rubber stamp" type of review. *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

The death penalty statute must not be applied freakishly or unevenly. We review each and every death penalty imposed in the State of Arizona, and not only are we in a position to insure that, based upon all the records that come before us, the death penalty is evenly enforced on appeal, but also that it is not inflicted in an arbitrary and capricious manner. As was stated by the United States Supreme Court:

"[W]here discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859, 883 (1976).

And:

"This means that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. * * *." *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398, 406 (1980).

In *Godfrey v. Georgia,* supra, the defendant had an argument with his estranged wife and was rebuffed in his attempt at reconciliation. He went to his mother-in-law's trailer and, shooting through the window with a shotgun, killed his wife. Then he entered the trailer, injured his fleeing daughter by striking her with the gun, and killed the mother-in-law. In holding that the Georgia death statute had been too broadly interpreted by the Georgia Supreme Court, the United States Supreme Court stated that:

"* * * There is no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not. Accordingly, the judgment of the Georgia Supreme Court insofar as it leaves standing the petitioner's death sentences is reversed, and the case is remanded to that court for further proceedings." *Godfrey v. Georgia,* supra, 446 U.S. at 433, 100 S.Ct. at 1767, 64 L.Ed.2d at 409.

■ We believe *Godfrey v. Georgia,* supra, mandates that the death penalty should be reserved for only the most aggravating of circumstances, circumstances that are so shocking or repugnant that the murder stands out above the norm of first degree murders, or the background of the defendant sets him apart from the usual murderer.

■ In the instant case, based upon our independent view of the record, we believe that the two aggravating circumstances were outweighed by the mitigating circumstance. The fact that he has been a model prisoner and has attempted to further his

education can and should be considered. Also, when we consider the age of the defendant at the time of the murder (21), the fact that the evidence supports a finding that the victim shot first (twice), see *Watson I*, 114 Ariz. at 4, 559 P.2d at 124, and that the codefendant, Timothy Reid, received a life sentence rather than death, *State v. Reid*, 114 Ariz. 16, 559 P.2d 136 (1976), cert. denied 431 U.S. 921, 97 S.Ct. 2191, 53 L.Ed.2d 234 (1977), we find that the mitigating circumstances are sufficient to overcome the aggravating circumstances. Weighing these factors, we believe that the imposition of the death penalty is not mandated in the instant case. *Godfrey v. Georgia*, supra.

The sentence of death is set aside, and the matter is remanded to the trial court with directions to enter a sentence of life imprisonment without possibility of parole for 25 years.

HOLOHAN, V. C. J., and GORDON, J., concur.

STRUCKMEYER, C. J., and HAYS, J., specially concur.