857 P.2d 1261

**STATE of Arizona, Appellee,**

v.

**Samuel Villegas LOPEZ, Appellant.**

**No. CR–90–0247–AP.**

Supreme Court of Arizona,
En Banc.

Aug. 24, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Dawn M. Northup, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James R. Rummage, Deputy Maricopa County Public Defender, Phoenix, for appellant.

## OPINION

MOELLER, Vice Chief Justice.

### PROCEDURAL HISTORY

A jury convicted defendant of first degree murder and other offenses. The trial court then sentenced him to death. In an earlier appeal, all the convictions were affirmed, but the death sentence was vacated and remanded for resentencing. *State v. Lopez*, 163 Ariz. 108, 786 P.2d 959 (1990) (*Lopez I*). The trial court then conducted a second sentencing hearing and again sentenced defendant to death. The sentence has been automatically appealed to this court, and we have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031.

### FACTS

On October 29, 1986, Phoenix police responded to a "check welfare" call at an apartment in Phoenix. There police found the victim's body and evidence of a terrible and prolonged struggle. A window had been broken from the inside out, scattering glass for seven to eight feet. A screen door bore a concave impression matching the shape of a body. A bookcase was knocked over, and broken pieces of ceramic were found on the bed, the floor, and in the victim's hair. Blood was splattered on the walls in the kitchen, bedroom, and bathroom. Blood was smeared on the screen door, and, in the kitchen, police found bloody footprints, blood on the refrigerator, blood on the stove, and diluted blood around the kitchen sink.

The victim was a 59–year–old woman, 5' 2" tall, and weighed 124 pounds. Her face was covered with a pillow, she was blindfolded with her pajama bottoms, and her mouth was gagged with a scarf. She had three stab wounds in the left scalp that extended to her skull, a stab wound on her left cheek, approximately 23 stab wounds in her left breast and upper chest, and her throat had been cut. Death was caused by the slit throat and multiple stab wounds to

the chest. All of the wounds were inflicted pre-mortem or, at least, a very short time after death.

In addition to the stab wounds, the victim had bruises on her left cheek and left hand, and defensive wounds on her right arm. From the flow of blood, the medical examiner determined that she had been standing at some point after having been stabbed. Semen was found in her vagina and anus.

At the second sentencing hearing, additional evidence was submitted in addition to that which was already before the court. On the issue of whether the murder was especially cruel, heinous, or depraved, the defense introduced the testimony of Dr. Phillip Keen, a Yavapai County medical examiner. On the issue of intoxication, the defense submitted the videotaped deposition of Dr. Otto Bendheim, a psychiatrist, and the taped pretrial statements of two witnesses who had seen the defendant on the night of the murder. Dr. Robert Dean, a psychiatrist, testified for the state on the intoxication issue and some arrest records were received in explanation of his opinion testimony. On the issue of mitigation by reason of defendant's in-custody behavior, the court received certain prison records and the testimony of Deputy Sheriff Rick Bailey.

The trial judge again sentenced defendant to death, finding, as he had at the first sentencing, that the murder was especially cruel, heinous, and depraved and that there were no mitigating factors sufficiently substantial to call for leniency.

### QUESTIONS PRESENTED

1. Was the murder especially cruel, heinous, or depraved under A.R.S. § 13–703(F)(6)?

2. Did the defendant present intoxication evidence sufficient to establish a statutory mitigating factor under A.R.S. § 13–703(G)(1)?

3. Did defendant prove, as a mitigating circumstance, that he was pathologically intoxicated?

4. Did the trial court erroneously refuse to consider intoxication evidence as a non-statutory mitigating factor?

5. Did the defendant prove that his conduct during incarceration was a nonstatutory mitigating factor sufficiently substantial to call for leniency?

6. Is death by infliction of lethal gas cruel and unusual punishment?

7. Was the defendant constitutionally entitled to a jury determination of aggravating and mitigating factors?

8. Is the Arizona capital sentencing scheme unconstitutional because it does not sufficiently channel the sentencer's discretion?

9. Is this court required by the United States Constitution to conduct a proportionality review in capital cases?

### DISCUSSION

**I. Was the murder Especially Cruel, Heinous, or Depraved Under A.R.S. § 13–703(F)(6)?**

Defendant argues that the finding that the murder was committed in an especially cruel, heinous, and depraved manner is not supported by the evidence. The state contends that, because this court already determined, in the first appeal, that the murder was especially cruel, heinous, and depraved, *see Lopez I*, 163 Ariz. at 114–15, 786 P.2d at 965–66, we should not reexamine the issue. However, some of the new evidence offered at the second sentencing bears on this issue; therefore, we will reexamine it.

#### A. Cruelty

Dr. Phillip Keen testified for defendant that, in his opinion, the wounds defendant inflicted on the victim over a three-to-fifteen minute period were all directed at killing her. From this testimony, defendant argues that none of the wounds was inflicted solely to cause pain. He claims there is no evidence of torture; he simply continued to stab the victim until she died. Defendant argues that the especially cruel aggravating factor is intended to ferret out

those murderers who inflict gratuitous physical abuse on their victim. Because he did not do that, he argues, the murder was not especially cruel. We disagree.

■ A victim need not be physically tortured for a murder to be especially cruel. *State v. Lavers*, 168 Ariz. 376, 392, 814 P.2d 333, 349, *cert. denied*, — U.S. —, 112 S.Ct. 343, 116 L.Ed.2d 282 (1991). A murder is especially cruel if the victim consciously experiences physical abuse or mental anguish before death. *State v. Amaya–Ruiz*, 166 Ariz. 152, 177, 800 P.2d 1260, 1285 (1990), *cert. denied*, — U.S. —, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991); *State v. Fulminante*, 161 Ariz. 237, 255, 778 P.2d 602, 620 (1988), *aff'd*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Mental suffering includes uncertainty over one's ultimate fate. *State v. Gillies*, 135 Ariz. 500, 513, 662 P.2d 1007, 1020 (1983), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985). The victim's suffering, however, must have been foreseeable to the defendant. *State v. Hinchey*, 165 Ariz. 432, 438, 799 P.2d 352, 358, *cert. denied*, 499 U.S. 963, 111 S.Ct. 1589, 113 L.Ed.2d 653 (1991).

■ The victim in this case was stabbed 23 times in the upper chest and three times in the abdomen. Her throat was cut. She was sexually assaulted and had semen in both her vagina and anus. She had defensive wounds on her forearms. There were bruises on her body. The apartment was knocked asunder, evidencing a terrific struggle for life during which time the victim was obviously conscious. The top of the victim's shoes were bloodied, indicating that she had been standing up at some point after being stabbed. This grisly and ultimately fatal nightmare lasted from three minutes to as long as 15 minutes.

Obviously, the victim endured great physical and mental suffering over a relatively protracted period of time while she struggled for her life. Her suffering was not only foreseeable, it was unavoidably obvious to the defendant. This murder was undoubtedly especially cruel. *See Lavers*, 168 Ariz. at 393, 814 P.2d at 350 (in determining whether a murder is especially cruel, this court looks at the entire murder transaction).

**B. Heinousness and Depravity**

■ Defendant also argues that the trial court's especially heinous and depraved finding should be set aside. Even if we agreed, the A.R.S. § 13–703(F)(6) aggravating factor would still be satisfied because the elements of cruelty, heinousness, or depravity are stated in the disjunctive, and the presence of any of the three is sufficient. *See Fulminante*, 161 Ariz. at 254, 778 P.2d at 619. Nonetheless, we have reexamined the record in light of defendant's argument.

In the first appeal, defendant did not challenge the findings of heinousness and depravity. Our independent review of the record, however, led us to agree with the trial court's findings. *Lopez I*, 163 Ariz. at 114–15, 786 P.2d at 965–66.

At the second sentencing, the trial court made the following finding:

7. The Defendant did commit the offense in an especially heinous and depraved manner.

The Defendant's sexual assault of the victim, whether it occurred before or after death, the securing of the pajama bottoms about her eyes, the cramming of a scarf in the victim's mouth, all constitute evidence of the Defendant's heinous and depraved mind.

■ Defendant argues that the trial court's findings do not comply with the standards set forth in *State v. Gretzler*, 135 Ariz. 42, 51–52, 659 P.2d 1, 10–11, *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). His argument suggests that because the judge did not specifically mention the *Gretzler* factors in the special verdict, it is deficient. There is no such requirement.

■ Heinousness and depravity focus on the defendant's state of mind at the time of the offense. *State v. Amaya–Ruiz*, 166 Ariz. at 178, 800 P.2d at 1286. In *Gretzler*, the court set forth several specific factors, which earlier cases suggested could appro-

priately be considered in determining whether a murder was especially heinous or depraved. They were: (1) whether defendant relished the murder; (2) whether defendant inflicted gratuitous violence beyond that necessary to kill; (3) whether the defendant mutilated the victim's body; (4) whether the crime was senseless; and (5) whether the victim was helpless. *Gretzler,* 135 Ariz. at 51–52, 659 P.2d at 10–11.

◼ Several of these items are satisfied here. The defendant inflicted gratuitous violence on the victim. Notwithstanding Dr. Keen's testimony that the wounds were all consistent with an attempt to inflict death, and the defendant's interpretation of that testimony as meaning that he repeatedly stabbed the victim out of surprise that she did not immediately die, the clear fact is that the multiple stab wounds in the chest and the abdomen, along with the throat cutting, certainly qualify as gratuitous violence. We reject defendant's argument that he should be credited with a wholesome mind because he chose a murder weapon that did not cause death instantaneously. Moreover, the knife wounds to the face, the sexual assault, the binding of the victim's eyes, and the gagging of her mouth were not directed toward killing the victim and clearly bespeak gratuitous violence.

The murder also was senseless. Although the defendant clearly intended to kill the victim, there was no reason to do so. The sexual assault could have been committed without the murder, and no other reason for the killing is apparent from the record. Nothing in the record suggests that the defendant and the victim knew each other or had any prior contact.

This case also meets the "helplessness" test of *Gretzler.* The victim was a 59–year–old, 124–pound woman. The defendant is a young man, then aged 24, and in apparent good health. The victim was gagged so she could not call for help. At some point, she was blindfolded so she could not see. Although there was evidence of a prolonged struggle, for all practical purposes this uneven match was over after the first serious wounds were inflicted on the victim. In prior cases, we have held that a victim is helpless when disabled and unable to resist the murder. *See State v. Chaney,* 141 Ariz. 295, 312–13, 686 P.2d 1265, 1282–83 (1984) (victim had already been shot, and defendant knew that the victim could not resist when he shot him again); *State v. Harding,* 137 Ariz. 278, 670 P.2d 383 (1983) (although originally resisting, the victims were tied up and unable effectively to resist prior to being killed), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984).

In short, on this second appeal we again agree with the trial court's finding that this killing was especially heinous and depraved within the meaning of A.R.S. § 13–703(F)(6).

## II. Intoxication as a Mitigating Factor

Defendant contends that the trial court should have mitigated his death penalty to life imprisonment because of his alleged intoxication at the time of the crimes. He advances three separate, but related, arguments concerning intoxication. We address them separately.

### A. Statutory Mitigation for Intoxication Under A.R.S. § 13–703(G)(1)

◼ Any mental or physical condition, including intoxication, is considered mitigation if "the defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 703(G)(1). Although defendant had always denied he was intoxicated at the time of the offense, he urged intoxication as a statutory mitigating circumstance at both of his sentencings. At the first sentencing, the trial court weighed and rejected intoxication as a statutory mitigating factor by the trial court. We agreed with that finding in *Lopez I,* 163 Ariz. at 115, 786 P.2d at 966.

◼ At the second sentencing, defendant used the taped pretrial statements of two women to supplement their trial testimony. These two witnesses lived together

in an apartment. One of them talked to defendant at a park near her apartment early in the evening of the murder and described him as then being "calm." Later, when defendant appeared at the witnesses' apartment to "talk," one of them described him as drunk. In a seeming invitation, defendant asked one of the witnesses if she "got high"; she said no, and defendant then went behind her apartment. According to one of the witnesses, when he returned approximately five minutes later, defendant was shaking and unable to stand up without leaning on a pole. He then tried to prevent the witness from going inside, and the other witness came to help her. This other witness stated that defendant was "on something." The events at the apartment occurred between 11:30 p.m. and midnight. The murder occurred at approximately 1:30 a.m.

The trial court weighed this new evidence along with all of the other evidence in the record. The judge again found it wanting. Given the totality of the evidence, the time lapse involved after the witnesses' observations, the defendant's own denial of intoxication, and the defendant's obvious recollection of details of the crime, *see Lopez I,* 163 Ariz. at 111, 786 P.2d at 962, we are also satisfied that defendant has failed to carry his burden under A.R.S. § 13–703(G)(1).

## B. Idiosyncratic or Pathological Intoxication

At his second sentencing, defendant advanced a new theory that he might have been suffering from idiosyncratic or pathological intoxication, as distinguished from normal intoxication. Idiosyncratic or pathological intoxication is a condition, quite rare, in which an individual exhibits sudden and unpredictable behavior very shortly after ingesting a very small amount of alcohol. Defendant argues that he proved by a preponderance of the evidence that he suffers from this condition and that the trial court erred when it failed to find this a mitigating circumstance.

 Defendant presented the testimony of Dr. Otto Bendheim, who noted

that defendant has displayed antisocial behavior at other times while intoxicated. Dr. Bendheim said that persons who suffer from pathological intoxication often deny their intoxication, as did this defendant. Because he lacked adequate confirmatory evidence, such as that the defendant would go "really wild" after only a beer or two, Dr. Bendheim could not make a diagnosis of pathological intoxication with any degree of medical certainty. He did, however, tender a tentative diagnosis of pathological intoxication stating, "I will emphasize that I will speculate, but on fairly good grounds, that this murder would not have occurred," but for the defendant's intoxication.

Dr. Dean, a psychiatrist, testified that defendant did not suffer from idiosyncratic intoxication disorder, although he did become sexually aggressive when drinking. He testified that those few persons suffering from this disorder usually have a predisposing physical condition, such as brain damage. Both doctors agreed there was no evidence of any such predisposing condition. Furthermore, four days after the murder in this case, and before he was apprehended, defendant, while admittedly intoxicated, planned and methodically carried out a sexual assault. Dr. Dean concluded that these actions were inconsistent with pathological intoxication.

After considering all of the factual evidence in the case and the expert testimony on the issue of pathological intoxication, the trial court made the following finding:

> Testimony was presented on behalf of the Defendant that he possibly suffered from a condition known as "pathological intoxication." Said testimony did not rise to any level of medical certainty, but rather was based upon a "hypothesis" or "speculation." The State presented evidence to rebut the "hypothesis" and "speculation," and the Court specifically finds that the Defendant failed to meet his burden of proof of establishing this mitigating factor by a preponderance of the evidence.

Even though this court reviews the evidence on sentencing issues in capital cases independently, the fact that the trial court found that the evidence did not establish a mitigating factor is an important factor in our analysis. *State v. Fierro*, 166 Ariz. 539, 553, 804 P.2d 72, 86 (1990) (court deferred to trial judge's determination that the evidence was insufficient to establish that the defendant's intoxication impaired his ability to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law, because the determination was based on credibility and weight). *See State v. Wallace*, 160 Ariz. 424, 426, 773 P.2d 983, 985 (1989) (court not compelled to accept the opinion of a defense expert where other psychiatric testimony contradicted that opinion and the defendant himself contradicted the expert's factual testimony), *cert. denied*, 494 U.S. 1047, 110 S.Ct. 1513, 108 L.Ed.2d 649 (1990); *State v. McMurtrey*, 151 Ariz. 105, 109, 726 P.2d 202, 206 (1986) (no finding of significant impairment when the state experts are unequivocal in their findings while defense experts are less exact in their findings), *cert. denied*, 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 530 (1987).

Based on our independent review, we agree with the trial court's determination that defendant failed to prove that he suffered from idiosyncratic or pathological intoxication. Therefore, it is not a mitigating circumstance, statutory or otherwise.

## C. Did the Trial Court Refuse to Consider Intoxication As a Non–Statutory Mitigating Factor?

■ Defendant contends that our ruling in *Lopez I*, as well as other Arizona case law, led the trial court to the erroneous conclusion that it must disregard evidence of intoxication unless such evidence rose to the statutory standard specified in A.R.S. § 13–703(G)(1). Under *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), defendant contends that his death sentence is unconstitutional and must be vacated. We disagree. In making this argument, defendant overlooks or ignores established Arizona statutory

provisions and case law dealing with the precise issue and, instead, seeks to contort a selected passage from *Lopez I* dealing with an entirely different issue.

Before *Lockett*, Arizona's death penalty statute, then A.R.S. § 13–454, listed certain mitigating circumstances without any "catchall" provision. At that time, this court believed that it could only consider mitigating factors that had been specified by the legislature. *See State v. Bishop*, 118 Ariz. 263, 269, 576 P.2d 122, 128, *vacated*, 439 U.S. 810, 99 S.Ct. 69, 58 L.Ed.2d 103 (1978). Indeed, the statute itself confined the court's consideration of both aggravating *and mitigating* circumstances to those listed in the statute. *See* Laws 1973, ch. 138, § 5. *Lockett* changed all that.

In *Lockett*, the Court, in a landmark death penalty case, held "in all but the rarest kind of capital case [the sentencer must] not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett*, 438 U.S. at 604, 98 S.Ct. at 2964–65 (footnotes omitted).

In *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), the defendant had been sentenced under the old statute and the trial court had refused to consider any evidence of mitigation of a type not enumerated in that statute. *Lockett* was decided while Watson's appeal was pending in this court. This court, recognizing the constitutional infirmity of the Arizona statute barring evidence of mitigating factors not expressly enumerated, declared that portion of the statute unconstitutional, stating:

> It is apparent that this restriction on the use of mitigating circumstances does not now pass constitutional muster. We hold that A.R.S. § 13–454(F), insofar as it limits the right of the defendant to show additional mitigating circumstances, is unconstitutional.

*Watson*, 120 Ariz. at 444–45, 586 P.2d at 1256–57.

Shortly after *Watson,* the Arizona legislature amended the mitigation portions of the death penalty statute to conform to the constitutional requirements of *Lockett* and *Watson. See* A.R.S. § 13–703(G)(1). This amended statute, under which this defendant was sentenced, provides:

> *Mitigating circumstances shall be any factors proffered by the defendant or the state which are relevant* in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities or record and any of the circumstances of the offense, *including but not limited to the following:* [then follows a list of statutorily recognized mitigating circumstances, including subsection (1) on capacity].

(emphasis added.)

Thus, Arizona case law and statutory law both comply with the constitutional command of *Lockett* that the only limitation on mitigating evidence is that it be relevant.

In 1983, this court had before it subsection (1) of the mitigation statute, the same subsection implicated in this case. We clearly prescribed what a trial court must do with evidence of lack of capacity that falls short of statutorily prescribed mitigation:

> In order to remain faithful to *Lockett* and *Watson,* ... [t]he court must consider the offered evidence further to determine whether it in some other way suggests that the defendant should be treated with leniency.... The trial court is not required to find a mitigating circumstance; nor is it required to make a statement that none has been found. The trial court must, however, consider the evidence.

*State v. McMurtrey,* 136 Ariz. 93, 102, 664 P.2d 637, 646, *cert. denied,* 464 U.S. 858, 104 S.Ct. 180, 78 L.Ed.2d 161 (1983).

In *Fierro,* 166 Ariz. at 553–54, 804 P.2d at 86–87, this court applied the *Lockett* principles in an intoxication case. In *Fierro,* although the defendant did not raise mental impairment as a defense to the crime itself, at sentencing he offered evidence of mental impairment through intoxication. The trial court concluded that the evidence fell short of showing the subsection (1) statutory mitigating circumstance. Although deferring to the trial court's finding, pursuant to its obligation to independently review all mitigating evidence, this court concluded that the evidence of intoxication, while not rising to the level of establishing that the defendant was "significantly impaired" as used in section 13–703(G)(1), nevertheless constituted appropriate evidence of mitigation. When combined with other factors, this finding warranted relief from the death penalty. *Id.* Although it is true that *Fierro* was not issued until some months after the second sentencing in this case, it is equally clear that *Fierro* announced no new point of law in Arizona, but merely applied the case law and the statute that have existed since the *Lockett* case.

Notwithstanding this extensive Arizona statutory and case law background, the defendant takes our 1990 language in *Lopez I* out of context to argue that the trial court must somehow have felt precluded from considering the evidence of intoxication. In *Lopez I,* defendant argued that the trial court erroneously concluded that the evidence of intoxication did not satisfy A.R.S. § 13–703(G)(1). No other argument concerning intoxication evidence was presented. In reviewing the issue that was presented and decided, we stated:

> Intoxication, by itself, does not constitute mitigation. *State v. Woratzeck,* 134 Ariz. 452, 458, 657 P.2d 865, 871 (1982). Ample evidence exists that defendant's intoxication was not pronounced enough to impair significantly his capacity to appreciate his conduct or to conform to the law. Based upon our review of the record, we agree with the trial court's assessment of the evidence.

*Lopez I,* 163 Ariz. at 115, 786 P.2d at 966.

In *Woratzeck,* there is also no indication that the defendant made other than a statutory argument. The burden of proving mitigation is on the defendant, A.R.S. § 13–703(C), and the duty to call such evidence to the court's attention also is on the

defendant. It is inconceivable that the trial judge in this case read the isolated language in *Lopez I* dealing with one issue as overruling other cases, including those of the United States Supreme Court. Defendant does not even attempt to explain how anyone would also read the *Lopez I* language as overruling the post-*Lockett* mitigation statute.

The trial judge in this case was not misled. In his special verdict, he expressly stated that "the prosecution and defendant were given the opportunity to present evidence and argument as to the adequacy or inadequacy of the evidence to establish the existence of ... *any of the mitigating circumstances set forth in A.R.S. § 13–703(G) and any of the mitigating circumstances of any nature whatsoever whether specified in the statute or not.*" (emphasis added.) In his concluding portion of the special verdict he reiterated that "the prosecution and the defendant have been permitted to rebut any information received at the hearing, including information presented at the trial, and were given fair *opportunity to present argument as to the adequacy* of the information to establish the existence ... *of any mitigating circumstances whether listed in A.R.S. § 13–703(G) or not.*" (emphasis added.)

We note parenthetically that the defendant did not argue in the trial court what he argues here, i.e., that the trial court should expressly consider the intoxication evidence as mitigation even if it fell short of statutory mitigation, nor did the state ever argue to the contrary. When the statute and case law so clearly show that the defendant may offer anything in mitigation, unlimited by statutory constraints, we will not presume that the trial judge made up a contrary rule of law and silently applied it, all the while denying it.

The defendant points out, however, that while this case was pending in this court, a divided panel of the United States Court of Appeals for the Ninth Circuit issued its opinion in *Jeffers v. Lewis*, 974 F.2d 1075 (9th Cir.1992) (2–1 decision). In that case, two members of the Ninth Circuit construed Arizona law much as the defendant

in this case would have us construe it. *Id.* at 1079. Because we disagree with the defendant's arguments, we also necessarily respectfully disagree with the conclusions of our two Ninth Circuit colleagues.

### III. Defendant's Conduct During Incarceration

Defendant argues that the trial court should have found that his adjustment to incarceration was a mitigating factor sufficient to relieve him from the death penalty. He contends that he has evolved into a model prisoner and, under *State v. Watson*, 129 Ariz. 60, 628 P.2d 943 (1981), this fact should be considered as mitigation.

In *Watson*, we held that behavior in custody after a death penalty has been imposed may be considered in mitigation. *Id.* at 63–64, 628 P.2d at 946–47. The court there found the defendant's adjustment to incarceration to be mitigating where defendant had not only been a model prisoner but had also furthered his education while in prison. Even in *Watson*, the in-custody behavior was only one of several mitigating circumstances that led this court to reduce a death penalty to life. *Id.* at 64, 628 P.2d at 947. The court also relied on several other substantial mitigating factors: defendant was only 21 at the time of the crime, the victim had shot twice at the defendant before the defendant shot at him, and the co-defendants had received only a life sentence. *Id.* In *Watson*, these factors, in combination with the factor of defendant's in-custody behavior, led the court to reduce Watson's sentence.

We believe, however, that we should subject claims of in-custody good behavior to close scrutiny. On this point, the facts offered in mitigation are not persuasive. Defendant was, at best, a model prisoner only while at the county jail awaiting resentencing. Before that, he had a long history of disciplinary problems while in prison, including several incidents while originally on death row. The trial court correctly observed that defendant would be expected to behave himself in county jail while awaiting resentencing. Given his

overall prison record, the trial court found defendant's behavior in prison was not mitigating. We agree with the trial court. *See State v. Atwood,* 171 Ariz. 576, 655, 832 P.2d 593, 672 (1992) (finding that even where the defendant had changed his goals and behavior in prison, that was not enough to find that the defendant was a model prisoner and was therefore not a mitigating circumstance), *cert. denied,* — U.S. —, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

## IV. Other Issues

■ The defendant advances, no doubt in order to preserve them for federal review, several additional contentions that have been decided adversely to him by this court. He contends that death by infliction of lethal gas is cruel and unusual punishment. This court has rejected that argument. *State v. Greenway,* 170 Ariz. 155, 160, 823 P.2d 22, 27 (1992); *State v. Stanley,* 167 Ariz. 519, 532, 809 P.2d 944, 957, *cert. denied,* — U.S. —, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991); *State v. Williams,* 166 Ariz. 132, 142, 800 P.2d 1240, 1250 (1987), *cert. denied,* — U.S. —, 111 S.Ct. 2043, 114 L.Ed.2d 128 (1991). At least one federal court has rejected this argument as well. *Gray v. Lucas,* 710 F.2d 1048, 1061 (5th Cir.), *cert. denied,* 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983).

■ Defendant argues that he was entitled to a jury trial on aggravating and mitigating factors. The Ninth Circuit has rejected this argument. *See Clark v. Ricketts,* 958 F.2d 851, 859 (9th Cir.1991) (relying on *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)), *cert. denied,* — U.S. —, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992). We have agreed with the Ninth Circuit in *State v. Landrigan,* 176 Ariz. 1, 6, 859 P.2d 111, 116 (1993); *see also State v. Spencer,* 176 Ariz. 36, 859 P.2d 146 (1993).

■ Defendant contends that the Arizona death penalty statutes violate the Eighth Amendment because they do not sufficiently channel the sentencer's discre-

tion. We rejected this argument in *Greenway,* 170 Ariz. at 164, 823 P.2d at 31.

■ Finally, defendant contends that we should conduct a proportionality review, but we rejected proportionality reviews in *State v. Salazar,* 173 Ariz. 399, 844 P.2d 566 (1992), *cert. denied,* — U.S. —, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993).

## DISPOSITION

Having conducted an independent review of the record, we agree with the trial judge that the defendant murdered the victim in an especially cruel, heinous, and depraved manner and that there are no mitigating circumstances, statutory or otherwise, sufficiently substantial to call for leniency. The sentence of death is affirmed.

FELDMAN, C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.