**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMUEL VILLEGAS LOPEZ, | No. 12-16084 |
| Plaintiff - Appellant, | D.C. No. 2:12-cv-00245-NVW District of Arizona, |
| v. | Phoenix |
| JANICE K BREWER, Governor of Arizona; CHARLES L. RYAN, Director, Arizona Department of Corrections; RON CREDIO, Warden, Arizona Department of Corrections - Eyman; LANCE R. HETMER, named as: Lance Hetmer/Warden, Arizona Department of Corrections - Florence; UNKOWN PARTIES, named as: IV Team Leader; IV Team Members 1-5; Special Operations Team Leader; Special Operations Team Recorder; Special Operations Team Members 1-5; and Does 1-25, | AMENDED ORDER |
| Defendants - Appellees. | |

Before: THOMAS, Circuit Judge and Capital Case Coordinator.

A panel of this Court issued an opinion affirming the district court's denial of petitioner's motion for a preliminary injunction and denying his motion for a stay of execution. Petitioner filed a petition for rehearing and rehearing en banc. The Warden elected not to file an optional response.

Pursuant to the rules applicable to capital cases when an execution date has been scheduled, a deadline was established by which any judge could request a vote on whether the panel's opinion should be reheard en banc. A judge timely requested a vote on the petition for rehearing en banc. A majority of the judges eligible to vote did not vote in favor of rehearing en banc. Judges Ikuta, Murguia, and Nguyen were recused.

Therefore, the Petition for Rehearing En Banc is DENIED. En banc proceedings with respect to the panel opinion are concluded.



<u>Lopez</u> v. <u>Brewer</u>, No. 12-16084

Chief Judge **KOZINSKI**, with whom Judges **O'SCANNLAIN** and **BEA** join, concurring:

There is profound irony in Lopez's insistence that his death be painless.

This is a description of his crimes, as related by the Arizona Supreme Court:

> Overturned and broken furnishings in the blood-splattered apartment indicated that a tremendous struggle took place prior to the murder. A scarf had been stuffed into the victim's mouth, and she had been blindfolded with her pajama pants. An autopsy revealed that her throat had been slashed, and she had been stabbed twenty-three times in her left breast and upper chest and three times in her abdomen. Seminal fluid was found in both her vagina and anus.

> . . . .

> When the officers arrived at the victim's residence, the apartment's condition evinced that a bloody battle had raged throughout every room in the apartment. Blood was splattered throughout the apartment and there were blood drops on the bathroom and kitchen floors. A concentration of blood drops in the kitchen, as well as the stream of dried blood down the victim's body and onto her bloodstained feet, indicated the victim stood for some time while being stabbed. The victim had three lacerations on her scalp and a stab wound to the left cheek. These injuries, although not fatal, caused a considerable amount of bleeding. The victim had lacerations on her right arm and bruises and cuts on her left hand, all of which were characteristic of defensive wounds.

<u>State</u> v. <u>Lopez</u>, 786 P.2d 959, 962, 966 (Ariz. 1990). "[T]he victim endured great physical and mental suffering over a relatively protracted period of time while she struggled for her life." <u>State</u> v. <u>Lopez</u>, 857 P.2d 1261, 1271 (Ariz. 1993). Based

on what it found to be a vicious and prolonged beating, stabbing, rape and sodomy, the trial judge held that Lopez "murdered the victim in an especially cruel, heinous, and depraved manner." Id.

The panel delicately omits these facts, as did our previous opinion, which merely referred to the crime as "brutal," Lopez v. Ryan, 630 F.3d 1198, 1201 n.1 (9th Cir. 2011), but common decency surely calls on us to acknowledge that Lopez is not the victim here, and whatever pain he may suffer incident to his execution pales in comparison to the agony and terror he inflicted on a defenseless woman whose body he used to sate his lust. Judge Berzon's dissent and Judges Pregerson's and Reinhardt's dissentals obsess about the discomfort Lopez might suffer during his execution, but say not a word about the incomparable suffering the victim endured during the last desperate minutes of her life.

The dissenters describe with zest Towery's execution, trying hard to make it sound like some sort of horror show. But, even if we accept the worst claims about that execution, it doesn't amount to a hill of beans. Towery was pricked several times in an earnest effort to find a vein that supports a catheter. This is an unpleasant experience routinely borne by many people who have deep-seated veins that aren't easily catheterized. See Anne Paxton, College of American Pathologists, "Sticking Points—How To Handle Difficult Blood Draws,"

http://goo.gl/PGYVJ (last visited May 16, 2012).

The procedure is unpleasant, to be sure, but no one—not even Lopez's advocates—claims it's excruciating. The most the dissenters can drag out of the record are mushy phrases such as "great pain," "severe pain" and "serious pain." See Reinhardt dissental at 3, 4; Lopez v. Brewer, No. 12-16084, at 1, 10 (May 15, 2012) (Berzon, J., concurring in part and dissenting in part). That's how most people describe a bad headache. This level of pain simply does not rise to an Eighth Amendment violation. Towery's discomfort, even if it were replicated in Lopez's case, comes nowhere near true suffering, such as that endured by Estafana Holmes, who died more than a quarter-century ago after twenty-six knife wounds and multiple lacerations; being beaten, raped, sodomized and degraded; and shedding liters of blood as she struggled in vain to save her life. See Lopez, 857 P.2d at 1265. Estafana had no chance to call her lawyer; there were no witnesses to her agony; she did not get to say farewell to her loved ones; she was allowed no last meal or final statement; no Article III judges agonized over her ordeal. "The death-by-injection which [my colleagues] describe[] looks pretty desirable next to that." Callins v. Collins, 510 U.S. 1141, 1142 (1994) (Scalia, J., wisely concurring in the denial of certiorari).

Lopez is, of course, entitled to a humane execution; the state may not subject

him to "an objectively intolerable risk of harm." <u>Baze</u> v. <u>Rees</u>, 553 U.S. 35, 50 (2008) (plurality op.) (internal quotation marks omitted).  But the risk of some pain and discomfort, resulting from the subject's own physiology, is not intolerable. Many medical procedures cause pain and discomfort, sometimes severe: tooth extraction; rabies vaccinations; knee surgery; skin grafts; cystoscopies, to name just a few.  People endure these nonetheless as part of ordinary human existence. An execution need not be totally painless, nor is the state required to go to extraordinary lengths to avoid the possibility that the condemned criminal will suffer some pain incident to procedures designed to carry out his lawful sentence. See <u>id.</u>

Lopez has presented no evidence that his execution will involve "an objectively intolerable risk of serious harm." <u>Id.</u> (internal quotation marks omitted).  Absent such evidence, I don't see where he has raised a viable Eighth Amendment claim or any basis for enjoining his long delayed and richly deserved execution.

*Lopez v. Brewer*, No. 12-16084

PREGERSON, Circuit Judge, with whom Judges REINHARDT, WARDLAW, W. FLETCHER, and PAEZ, join, dissenting from the denial of rehearing en banc:

The State of Arizona continues to ignore this court's frequent requests to adopt a clear protocol stating the procedures it follows when executing its citizens. *See Towery v. Brewer*, 672 F.3d 650 (9th Cir. 2012)

As Judge Berzon reminds us in her partial dissent concerning the execution of Samuel Lopez, the simple fact remains that this court, the public, defense counsel, and inmates awaiting execution lack a definite understanding of the procedures and protocols the State of Arizona follows in executing its citizens. Because Arizona: (1) does not make known a detailed, written protocol; (2) limits the ability of counsel or witnesses to observe critical stages of the execution process; and (3) restricts its documentation of executions—prisoners awaiting execution and their defense counsel are prevented from obtaining information that could support a successful constitutional challenge to Arizona's use of lethal injection to execute death row prisoners.

The March 8, 2012 execution of Robert Towery is perhaps the starkest example of Arizona's flawed procedures. During that execution, Towery remained strapped to the execution table for more than an hour while execution team

-1-

members repeatedly poked and prodded him in an effort to set up both a primary and back-up IV line.

According to the Arizona Department of Corrections' ("ADC") log notes, at 9:49 a.m., Towery was restrained and secured to the execution table. At 9:52 a.m., the ADC Director specified the locations for the catheter sites. Towery remained strapped to the table for over thirty minutes, while the execution team made "multiple attempts" to insert left and right peripheral catheter IV lines. These attempts were unsuccessful. At 10:28 a.m., after these failed attempts, the IV Team Leader recommended a right femoral catheter as the primary IV line. This procedure required the use of a larger needle, a scalpel, and a "guide wire" to thread the needle into Towery's central femoral line.

According to the ADC log notes, the implementation of the central femoral line was completed at 10:50 a.m., nearly a full hour after the execution team began its work. At 10:59 a.m., a catheter was placed in Towery's right hand. Finally, at 11:17 a.m. Towery's execution began. Towery's autopsy revealed that both his femoral artery and femoral vein were punctured during the insertion of the IVs.

Because Towery is dead, we do not know how much pain he suffered during the hour that he was strapped to the execution table. What we do know, however, comes from his attorney, Dale Baich. Before his execution, Towery was told by

officials from the ADC that if he made any remarks during his "last statement" that were critical of the ADC, his microphone would be cut off. So Towery and his attorney devised a "code" system for Towery to communicate to his attorney if he experienced pain during his execution or was denied access to counsel. Under this code system, if Towery was denied access to his counsel, he would say during his last statement, "Hey Dale I should have called you." If there were problems with the insertion of the IV lines, or if Towery suffered pain during the insertion of the IV lines, he would utter the word "mistake" as part of his last statement. During Towery's last words, he said, "In the end, I should have called you Dale." Towery also said that he had made **"mistake, after mistake, after mistake."** (emphasis added).

Another example of cruel and unusual punishment involved the execution of Arizona prisoner Thomas Arnold Kemp on April 25, 2012. Instead of receiving the traditional three drug lethal injection mixture, Kemp was executed using only an injection of pentobarbital. Soon after receiving the lethal injection in his central femoral line, Kemp's right arm and torso began shaking "violently." In the district court, the State of Arizona argued that Kemp's execution took place "without incident," but the district court recognized that these words disregarded an eyewitness statement that Kemp convulsed for at least five seconds. Dr. Eric Katz

stated in a declaration that this description "suggests a partial seizure which began shortly after medication administration." An autopsy report revealed that despite Kemp's good veins that were quite prominent, Kemp had "at least three or more" punctures, including "at least one puncture in the right femoral area and at least two punctures over the left upper extremity."

Justice and logic compel the conclusion that clearly defined, written protocols are required when the state determines that it will execute one of its inmates. How would the public – prohibited from attending Arizona's executions – know that an execution was carried out consistent with Constitutional requirements without the disclosure of a written protocol? And how could a reviewing court be confident that Arizona is following constitutional procedures when taking the life of one of its citizens?

This court is not alone in its insistence that states who perform executions maintain a proper and consistent written protocol system. *See Taylor v. Crawford*, 457 F.3d 902 (8th Cir. 2006) (upholding the district court in directing the Missouri Department of Corrections to adopt a revised written protocol for lethal injections in Missouri, in light of the fact that the majority of the protocol was unwritten); *Clemons v. Crawford*, 585 F.3d 1119, 1122-23 (8th Cir. 2009) (summarizing the procedural and factual history of *Taylor v. Crawford*).

I would grant Samuel Lopez a stay of execution. The State of Arizona must comport with the requirements of due process of law and establish a **clear** and humane protocol that gives the public, this court, and most importantly, inmates and their defense counsel, notice of its execution procedures.

Arizona has stubbornly refused to define the amorphous and highly discretionary protocol it follows in executing its citizens. Until the state adopts a clearly written and humane execution protocol there exists a substantial risk that the constitutional rights of those it executes will be violated. Accordingly, I dissent.[1]

---

[1] Chief Judge Kozinski tells us that there can be no Eighth Amendment violation in this case because any pain that Lopez would suffer "pales in comparison" to the pain he inflicted upon the woman he murdered. Concurrence at 2. I agree with Chief Judge Kozinski that Lopez's crime was senseless, brutal, horrible, and tragic. But I disagree with the proposition that the pain and horror inflicted upon a murder victim is relevant in determining whether the state's method of execution constitutes "cruel and unusual punishment" in violation of the Eighth Amendment. To accept this proposition would allow the state to turn the place of execution into a torture chamber. The Supreme Court has instructed that the Eighth Amendment requires courts to look to "evolving standards of decency." *Kennedy v. Louisiana*, 554 U.S. 407, 420 (2008). There is nothing "decent" about what Lopez did to his victim. Such behavior should not be replicated.



*Lopez v. Brewer*, No. 12-16084

REINHARDT, Circuit Judge, with whom Judges PREGERSON, WARDLAW, W. FLETCHER, FISHER, PAEZ, and BERZON join, dissenting from the denial of rehearing en banc:

On multiple occasions in recent months, the State of Arizona has subjected prisoners whose lives it takes—and has subjected this court—to a mockery of the constitutional requirement of due process. In the case of Jeffrey Landrigan, the state announced days before the execution that it planned to use a foreign-source drug and refused "to comply with the district court's orders to provide . . . critical information about the provenance and efficacy of the" drug. *Landrigan v. Brewer*, 625 F.3d 1132, 1133 (9th Cir. 2010) (Wardlaw & W. Fletcher, JJ., concurring in the denial of rehearing en banc). In the case of Donald Beaty, the state announced *eighteen hours* before the execution that it intended to switch to the use of a drug that it had never tested and in the use of which it had never trained its executioners. *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (Reinhardt, J., dissenting from the denial of rehearing en banc). In the cases of Robert Towery and Robert Moormann, the state changed its written execution protocol at the last minute, then changed course yet again, informing the court just hours before argument that it was switching the method of execution "because it discovered at the last minute that the originally-planned drugs

-1-

had expired" a month before. *Towery v. Brewer*, 672 F.3d 650, 652-53 (9th Cir. 2012). In case after case, we have been forced to rely on the ad hoc representations of the state's counsel in conducting one of the gravest responsibilities that we are asked to perform: approving the state's plan to take a human life. *See, e.g.*, *West v. Brewer*, 652 F.3d 1060, 1060-61 (9th Cir. 2011). Over and over again, judges of this court have told the state that its cavalier defiance of due process must end. *See Landrigan*, 625 F.3d at 1133 (Wardlaw & W. Fletcher, JJ., concurring in the denial of rehearing en banc) ("The State's gamesmanship is unseemly at best, and inhumane at worst."); *Beaty*, 649 F.3d at 1072-73 (Reinhardt, J., dissenting from the denial of rehearing en banc) ("The state's last-minute action serves, whether by design or otherwise, to deprive a capital defendant of a fair opportunity to contest the constitutionality of the new method of death to be used."); *Towery*, 672 F.3d at 653 ("Over time, the State of Arizona . . . has insisted on amending its execution protocol on an ad hoc basis—through add-on practices, trial court representations and acknowledgments, and last minute written amendments—leaving the courts with a rolling protocol that forces us to engage with serious constitutional questions and complicated factual issues in the waning hours before executions. This approach cannot continue."). The state either has not heard the message or it has ignored it. It's hard to believe that it could be the former.

As Judge Berzon thoroughly explains in her partial dissent from the panel's refusal to stay the execution of Samuel Lopez, the state's mockery of due process goes far beyond the mere fact of repeated and last-minute changes. The state has systemically frustrated this court's ability to determine the constitutionality of its execution procedures by 1) refusing to codify those procedures in a detailed, written protocol; 2) limiting the ability of counsel or witnesses to observe critical parts of the execution process, particularly the setting of intravenous lines; and 3) restricting its documentation of executions so that little useful information is available to counsel, and to prisoners awaiting execution, even after the fact. I have nothing to add to Judge Berzon's bill of indictment against the state except the observation that if a skilled lawyer were instructing the state on how best to avoid *any* meaningful review of the constitutionality of its execution procedures, he would be hard pressed to improve on the unconscionable regime that the state has adopted.

Let me close simply by reciting the facts of Robert Towery's execution, as they are recounted in Judge Berzon's opinion. Fifty minutes elapsed before the execution team managed to place a primary line in Towery's groin. While the line should have been placed in Towery's femoral vein, an autopsy later showed that his femoral *artery* was pierced; the record shows that the administration of the execution drug into the femoral artery can cause great pain. It took the team *fifty-nine* minutes—just one

minute short of the one-hour limit approved in the *Baze* safe-harbor protocol, *Baze v. Rees*, 553 U.S. 35, 55 (2008)—to set a backup line. When that line was finally placed, it was in Towery's hand, even though the state's own doctor once testified that the administration of the execution drug through the vein in a prisoner's hand can cause pain. During this prolonged ordeal, the Director of the Department of Corrections contacted the state Attorney General's office. Towery, too, apparently sought to contact his lawyers, but the state refused his request. That brings us to the most chilling part of this story: the only reason we even know that Towery asked to speak with his lawyer is that he communicated that fact *in code* while speaking his last words. Why in code? Because, "[a]ccording to the undisputed record in this case, inmates have been told that their microphones will be cut off if they make statements critical of the Arizona Department of Corrections." Berzon Dissent at 11. As a result, not only was Towery denied his right to counsel; Lopez and all prisoners whom the state may seek to execute in the future were denied their rights to litigate meaningfully whether they, too, may suffer severe pain during the execution process. This is not due process. It is barely even process at all.

If we are to continue the state-sanctioned killing of prisoners, in the United States in 2012, we must find a better way than Arizona's. The majority's hollow warning to the state that "Arizona's ad hoc approach risks going beyond" what is

constitutional can only inspire chuckles in the Arizona Attorney General's and Governor's offices. By now they must know how feeble the authority of this court is in death penalty cases, at least as we have interpreted it, and how unwilling the Supreme Court is to enforce the Eighth Amendment. For that reason this dissent is likely as pointless as the majority opinion and its futile reminder of our pointless repeated remonstrances to the state. Next time Arizona flouts the Constitution, we might as well remain silent and not continue to pretend that it matters what we say—unless we are willing to take action rather than simply shed more futile tears.